# Noonan *v.* Pardee, Appellant.

*Mines and mining—Surface support.*

Where there has been a horizontal division of land, the owner of the subjacent estate, coal or other mineral, owes to the superincumbent owner a right of support. This is an absolute right arising out of the ownership of the surface. Good or bad mining in no way affects the responsibility; what the surface owner has a right to demand is sufficient support, even, if to that end it be necessary to leave every pound of coal untouched under his land.

*Mines and mining—Surface support—When cause of action arises.*

A cause of action arises for failure to afford the surface sufficient support at the time when the coal is removed without leaving sufficient support, and this is the case although the owner of the surface may have been ignorant of the violation of his right to support: Lewey v. Fricke Coke Co., 166 Pa. 536, distinguished.

*Mines and mining—Surface support—Right of owner of surface to access to mine.*

The owner of the surface has a right of access to the mine below the surface to see that his right of surface support is being maintained.

*Mines and mining—Surface support—Statute of limitations.*

Where a mine operator fails to furnish sufficient support, the right of action against him is barred after the expiration of six years. If the injury has been partly due to mining before six years prior to suit brought, and partly to mining after that date, the action will not be barred.

The date of a "cave in" is not the date of the cause of action, that is only the consequence of a previous cause.

The right to sue passes to the surface owner who is in possession when the subsidence occurs, without regard to the date of his conveyance; this right is barred by the statute of limitations if the cause of the subsidence arose more than six years before suit brought.

Even if the main body of the coal has been mined out more than six years before suit brought, yet, if the owner of the coal has done additional mining by removal of coal left in previous work, or by robbing of pillars within six years before suit brought, and without such additional mining, the surface would not have subsided during the occupancy of the particular owner of the surface, yet if such additional work or mining hasten the result, the owner of the coal is answerable in damages therefor.

If the owner of the coal by mining within six years another underlying seam whereby the pillars and support left in a seam above, which otherwise would have been sufficient to support the surface, have been rendered insufficient, and a cave in occurs, the owner of the coal is answerable to the owner of the surface in damages.

*Mines and mining—Surface support—Measure of damages.*

The measure of damages for failure to furnish surface support is the actual loss the owners of the surface have sustained to their land, including the buildings thereon by reason of the cave in.   The difference in the market value before and after the injury, in this class of cases, is not the true rule.

*Mines and mining—Surface support—Lateral support—Pleading allegata—Pro bata.*

Where in an action of trespass the sole cause of action alleged in plaintiff's statement is the wrongful removal of coal under plaintiff's land so that the surface fell in, a recovery cannot be had where the proof shows that there had been no mining under the plaintiff's land for more than six years, but that defendants had removed lateral support at other mines some distance from the plaintiff's lot.   The duty of maintaining surface support, and the duty of maintaining lateral support are altogether different, and the rule for the compensation for damages in the case of the violation of either duty, is not the same.   In such a case where at the time of the final disposition of the case, the statute of limitations has barred the cause of action, the statement cannot be amended so as to conform to the proofs.

Argued April 12, 1900.   Appeal, No. 74, Jan. T., 1900, by defendant, from judgment of C. P. Luzerne Co., Oct. T., 1894, No. 1299, on verdict for plaintiff in case of Michael Noonan v. Calvin Pardee.   Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reversed.

Trepass for injuries caused by a cave in of surface.

HALSEY, J., charged in part as follows :

Michael Noonan and Margaret Noonan, his wife, have brought suit here against C. Pardee, administrator of Ario Pardee, deceased, and Frank Pardee, to recover damages because of injury alleged to have been done by the defendants to the plaintiffs' property in the removal of the coal underlying the same or in adjacent or proximate mining.

Of course there has been no testimony adduced here showing that any of this mining was done by Frank Pardee, and at the close of the plaintiff's testimony on motion of counsel for the defendants, a nonsuit was entered as to Frank Pardee. Therefore he is eliminated from your consideration in reaching a disposition of this case.   The salient facts, gentlemen of the jury, out of which this contention grows, are as follows : On

January 11, 1892, Michael Noonan and his wife jointly owned the property in Hazleton, being lot No. 9 in square 61. On the evening of that day a subsidence or a settling of the surface occurred by reason of which this property was alleged to have been injured. It was occupied at the time by Noonan and his wife, Mr. Helferty and his family on the one side and by a tenant on the other, whose name I think was Dugan. It was a double house, three rooms I think on the lower floor and three on the upper floor, with the ordinary halls on either side. The injury to the property by this subsidence, settling or cave has been described to you in detail by the different witnesses in the case. Mr. Helferty has described it more distinctly than any others, and he testifies to you that there was a general racking of the house and a settling of it from one to two feet. The walls and the sides of the house were thrown out of place. The plaster was cracked, the superficial character of the lot, the water courses and the drainage, were changed, resulting, as the plaintiff alleges, in injury to the property. It has been shown that the mining operations in the mines generally under and adjacent to that property from 1858 to 1895 were carried on by Ario Pardee & Company and other parties; possibly by Ario Pardee & Company from 1874 down to 1895. The law as to the duty of the defendants, or operators of these mines, is, that in order that the plaintiff may recover here you must find that the subsidence, crush, cave or accident came from mining operations carried on by the defendants—by Ario Pardee & Company. There can be no recovery against them unless the mining and the removal of the coal was done by them or through their agent or agents. [If the defendants carried on mining operations in any portion of these mines which resulted in the accident or cave which did the injury to the plaintiffs' property, then you would, under the law, be justified in finding a verdict in plaintiffs' favor for the amount which you find to be the money value of such injury.] [3] The plaintiff was the owner of the surface, and not of the coal. Owners of the surface are, under the law, entitled to the possession of the surface free from any injury that may be done thereto by the owners of the coal in the mining and removing of the same. In other words, if the coal is removed by the owners, they must remove it so as to do no injury to the owners of the surface. It is the

duty of the owners of the coal to support the surface when they so mine the coal. The immediate mining under this property was in the Mammoth vein in the first lift, and I think also, gentlemen of the jury, there was testimony in the case that there had been mining in the Wharton vein. The Mammoth vein was about 100 feet below the surface of the lot of the Noonans, and the Wharton was some fifty feet below the Mammoth, so that the Wharton was 150 feet below the surface of the Noonan lot. From the mine inspector's map it appears that no immediate mining was done in this vein since 1858—that is, in the Mammoth. It would appear generally from the testimony that the injury complained of here did not come from the immediate mining and its consequences. Did it come from any other source? Mr. McNair has testified (and he is a mining engineer and has been in charge of these mines and knows all about the inside operations of them) that there was no immediate mining under this property to the best of his judgment since 1858. [If you should find that this injury did not come from immediate mining under the property, did it come from the general mining carried on by these defendants in the Hazleton mines which were generally a part and parcel of these mines? If it did, and you should so find, then these defendants under the law would be liable in damages for the amount of the injury which you find the plaintiffs sustained.] [4] You have heard the theories as to the cause of the injury to this property. There is no question that there was a subsidence, a cave, a settling which caused injury to this property. Was this injury done by these defendants? If it was then we say to you as a question of law it is your duty to proceed to the other question and ascertain the amount in money of the injury the plaintiffs may have sustained. [The measure of damage is the market value; and market value has been defined as a price established by public sales in the way of ordinary business. The market value is such a sum of money as the property is worth in the market to persons generally who would pay the just and full value. What is meant by the market value is not the price the land would bring at a forced sale, but what it or land similarly situated would bring at a sale after due notice and under fair conditions. In getting at the damage sustained by the plaintiffs, you will take into consideration that which has been done in

the way of making reparation—the repairing of the property injured. The evidence has been adduced here that the injury, the damage done to this property, has been repaired at the expense of the Lehigh Valley Railroad Company. How far did that go toward a reparation of the injury? You heard the testimony of witnesses who have come into court here and told you as to the character of the injuries, as to what was done in the reparation of them, and the effect of the repairs. Mr. Rousche, a contractor of many years' residence in the city of Hazleton, has told you that the injury has been substantially repaired. Mr. Boyle, a contractor who has lived in the locality for many years, testifies to the same effect. There is no testimony here on the part of the plaintiff that he objected to the repairs or that he complained that they were insufficient. Now, were they sufficient and did they repair the injury done to this property by reason of this subsidence? There is the further testimony in the case as to the injury done to the market value, as I have defined it to you. Witnesses have been called here to testify as to the market value before the injury, and the market value after the injury, after the excitement incident to the accident has been allayed. This, under the rule, is a fair measure of the market value, namely, the difference between the fair market value of the property before the accident and what it was worth after the accident as affected by the accident.] [5] After the excitement incident to the accident had subsided, after the community had ceased to have any fear arising from the subsidence, from the cave, from the settling of the mines. That was the time at which the market value should determine and fix the value of the property, not when the community was excited and disturbed and frightened and away from their homes, but after everything had quieted down, what was then the market value of this property?

Verdict and judgment for plaintiff for $2,790. Defendant appealed.

*Errors assigned* among others were (2) refusal to give binding instructions for defendant; (3–5) above instructions, quoting them.

*John G. Johnson* and *Henry W. Palmer*, for appellant.—It was the duty of the trial judge to sustain any point denying

the right of recovery by the plaintiffs for any removal of the coal at a time different from that averred in the statement, prior to their acquisition of the surface. We also submit he had no right to charge that the jury might find a verdict, in case they found the subsidence had resulted from mining not under the surface, but at a distance: Wolf v. Wolf, 158 Pa. 622; Wilhelm's App., 79 Pa. 134; Mitchell v. Darley Main Colliery Co., L. R. 14 Q. B. Div. 125.

Under their statement, the plaintiffs could not recover damages for injury occasioned by distant mining resulting in loss of lateral support: Richards v. Jenkins, 18 Law Times Rep. 437; Birmingham v. Allen, L. R. 6 Ch. Div. 284.

Even if the plaintiffs could recover damages for distant mining and attendant loss of lateral supports, no damages to their building could be recovered: Barringer & Adams on Mines and Mining, 686; Dalton v. Angus, 6 L. R. App. Cases, 791; Spohn v. Dives, 174 Pa. 474.

A verdict in favor of the defendant should have been directed because of the lack of proof of any removal of coal under the surface as claimed in the statement.

*John T. Lenahan*, with him *Thomas W. Hart* and *Edward A. Lynch*, for appellee.—No right of action exists in the party aggrieved until some actual damage has been sustained: Caldwell v. Julian, 2 Mills, 294; Knapp v. Slocomb, 9 Gray (Mass.) 73; U. S. v. Kennedy, 3 McLean (U. S.), 175; Passenger Conductors' Life Ins. Co. v. Birnbaum, 116 Pa. 565; Kistler v. Thompson, 158 Pa. 141; Jordeson v. Sutton, etc., Gas Co. L. R. (1899) 2 Ch. Div. 217.

The act of removing all support from the superincumbent soil is prima facie the cause of its subsequent subsiding; but if the subsiding is in fact caused by the weight of buildings erected subsequent to the execution of the lease of the mine, this is in the nature of contributive negligence and may be proved in defense. The authorities do not agree that the plaintiff's proof shall exclude that hypothesis in the first instance: Gilmore v. Driscoll, 122 Mass. 199; Cabot v. Kingman, 166 Mass. 405.

The injury to appellee's property was permanent. The general principle upon which compensation for injuries to real prop-

erty is given, is that the plaintiff should be reimbursed to the extent of the injury to the property. The injury caused by the defendant may be of a permanent nature; in such a case the measure of damages is the diminution in the market value of the property: Sedgwick on Dam. (8th ed.), sec. 932; Rockland Water Co. v. Tillson, 69 Me. 269; Herbert v. Rainey, 162 Pa. 525; McGettigan v. Potts, 149 Pa. 155.

The appellants, as lessees, took the " mining privileges," subject to the covenant to make good " every damage to lot or buildings: " Horn v. Miller, 136 Pa. 656; Hill v. Pardee, 143 Pa. 103; Jones v. Wagner, 66 Pa. 429; Carlin & Co. v. Chappel, 101 Pa. 348; Offerman v. Starr, 2 Pa. 394; Hill v. Pardee, 143 Pa. 98; East Union Twp. v. Comrey, 100 Pa. 367; Arons v. Smit, 173 Pa. 630.

OPINION BY MR. JUSTICE DEAN, October 11, 1901:

The plaintiffs purchased a lot by deed of April 22, 1890, in the borough of Hazleton, Luzerne county, and erected upon it a dwelling house. While they occupied the house, on January 11, 1892, the ground under it and in the neighborhood, subsided, leaving a saucer-like depression about three feet deep in the middle and extending over about two acres. The subsidence or " cave in " was caused by the mining of coal by the defendant, or his predecessors, under the subsided land; whether immediately under plaintiff's lot, or at some distance, is in dispute on the evidence; it is also in dispute as to the time the mining was done which caused the immediate injury. The plaintiff's deed was from one McAllister, whose title ran back through several grantors to one Michael Dugan, the last named grantee's deed being from the Lehigh Valley Railroad Company, and is dated July 31, 1869; at that date the company was owner of both the surface and the coal underneath. In the deed is this provision:

" And it is hereby made a condition of this grant, and expressly covenated and agreed, that the said Lehigh Valley Railroad Company, their successors and assigns, do except and reserve and shall always possess the exclusive privilege of mining under the lot of land herein conveyed, for coal and other minerals; and, for that purpose may extend such tunnels, drifts or excavations under the same, or any part thereof, as shall be

necessary or convenient for the mining and removal of such coal or other minerals, subject to the condition that the surface earth covering such coal, or other minerals, shall not be in any manner cut, broken or displaced; and that every damage which may be done to the said lot, or the buildings erected thereon, by the exercise of the mining privileges, herein reserved, shall be made good by the said Lehigh Valley Coal Company."

The defendant's testator had, about the year 1874, become the lessee of the coal from the Lehigh Valley Railroad Company. It will be noticed, this was many years before the plaintiff's conveyance of April 22, 1890; at the date of the injury, defendant was in possession of and operating the mines.

We do not think the stipulation in the railroad company's deed, so far as the evidence in this case is concerned, modified the defendant's liability as an operator or miner of the coal underneath the surface. The covenant in the deed neither expressly nor impliedly relieved the covenantor, or its lessees, from the duty of leaving sufficient support for the surface. It is little more than a reservation of the coal for itself and assigns and a stipulation for the performance of a common law duty on its part and that of its assigns.

There was evidence, that the mining which caused the injury had been done directly underneath the plaintiff's lot many years before the date of his deed and that none was done afterwards; and there was evidence on the part of the plaintiff that considerable mining had been done underneath after their occupation. In both aspects of it, this evidence had a direct bearing on the issue as made up by the pleading. The suit was trespass against the lessee of the railroad company.

The declaration is as follows:

" On the 11th of January, A. D. 1892, the said defendants, under a grant of coal under said lot, said grant being made subsequent to the deed from said company to said Dugan, removed the coal under the surface earth of said Lot No. 9, and so cut, broke and displaced the earth that the surface fell in and the dwelling house of the plaintiff thereon became greatly damaged, whereby the surface of said Lot No. 9, of the value of $1,500, was wholly destroyed; and the house thereon damaged in $3,000, wherefore, plaintiff claims from defendant $4,500." The injury and only injury here alleged, is, that de-

fendant removed the coal under the surface of lot No. 9, and to that averment only did the defendant plead. He averred and argued, that no mining had been done by him after the plaintiff's purchase and occupation of lot No. 9; yet the latter was permitted to recover on evidence showing a removal of the coal antedating his deed, a fact not averred. If the cause of the injury was bad mining before January 11, 1892, or the failure before that date of defendant, while mining, to leave sufficient props and supports for the surface, while the "cave-in" only occurred at that date, those who mined the coal would be clearly answerable. In this case it is alleged, this defendant mined the coal either before or after the plaintiff's deed. If the mining which caused the subsidence was more than six years before suit brought, and the injury occurred within six years, even though the miner or operator was still in possession, he is not answerable in damages, for there is no right of action for damages until the damage occurs.

The first question raised by the assignments of error, is, what was the date of the cause of action? A cause of action, is that which produces or affects the results complained of. Where there has been a horizontal division of the land, the owner of the subjacent estate, coal or other mineral, owes to the superincumbent owner, a right of support. This is an absolute right arising out of the ownership of the surface. Good or bad mining in no way affects the responsibility; what the surface owner has a right to demand is, sufficient support, even, if to that end, it be necessary to leave every pound of coal untouched under his land: Berwind v. Barnes, 13 W. N. C. 541; also the English case, Harris v. Ryding, 5 M. & W. 60, in which Baron PARKE uses this language : "I do not mean to say that all the coal does not belong to the defendants, but they cannot get it without leaving sufficient support." We have followed rigidly this rule, as thus tersely suggested, in all our decisions on the subject, and they have been many. Of course, defendant had a right to all the coal under this lot, but, he had no right to take any of it, if thereby, necessarily, the surface caved in. The measure of his enjoyment of his right must be determined by the measure of his absolute duty to the owner of the surface. So, there is nothing gained by adducing evidence of good or bad mining, or by a discussion of that subject.

The adjacent owner in this case, at some time failed in duty to the owner of the surface of this lot. The mere fact, that it caved in because the coal had been mined underneath, demonstrates this failure. When the coal was removed without leaving sufficient pillars, or without supplying sufficient artificial props, was the time when the subjacent owner failed in an absolute duty he owed to his neighbor above. And from that, dates the cause of action. Unless, when the coal was mined, the miner left no pillars, or too few, or of too small dimensions for such a mine, or did not replace the coal with ample artificial durable props, there was no cause of action; for, as is said by ERLE, J., Bonomi v. Backhouse, 96 Eng. Com. Law Rep. 642, " As a general principle it is difficult to conceive a cause of action from damage when no right has been violated and no wrong has been done." That was also a mining case. It was held that the check upon mining was for the protection of the surface, and that, " The surface owner, taking that advantage, may not unreasonably be held to take it with ordinary legal incidents, among others, a liability to be barred by six years from the wrongful act. In case of mining operations which are a trespass, the statute runs from the trespass, though the party may have been ignorant of the act done. The same rule may, with equal justice, apply to a surface owner notwithstanding he may have been ignorant of the violation of his right to support." This opinion was concurred in by the other two justices, CAMPBELL and COLERIDGE, but on appeal to the house of lords, the judgment was reversed; so, in that case, the final judgment in effect, declared, that the date of the " cavein " was the date from which the statute began to run. There are other English cases to the same effect and others directly to the contrary. So conflicting are the decisions, that the law on the subject in England cannot be considered settled. Cases on each side, including Bonomi v. Backhouse, have here been cited by both appellant and appellee. We think the opinion of ERLE, Justice, from which we have quoted, by far the most satisfactory in its reasons and more in accord with the conditions of coal mining in this country; and, as we are not bound by the final judgment in the law of England, we prefer to follow the opinion which meets our view of the law applicable to the facts before us. This court refused to follow Bonomi v.

Backhouse, in the late case of Lewey v. Fricke Coke Company, 166 Pa. 536. But this last case is clearly distinguishable from an action for failure to afford the surface sufficient support. Lewey v. Coke Company was where the defendant from an adjoining mine had mined and removed the plaintiff's coal underneath his land, yet did not disclose .the fact and plaintiff did not discover it until after the six years had run. We held, on the facts of that case, that the statute only began to run from the time of plaintiff's discovery, and this on the grounds, that the mining of his coal was a wrong and the concealment of the wrong a fraud. He had no means of discovery ; had no right of access to the mine to make observations and defendant no right at all under his land ; he had no reason to suspect or presume, that one who had no claim of right would wrongfully enter on his land and dig his coal. But here, the parties who mined this coal, had a right so to do ; a right reserved by the original owner ; the surface owner, too, had a right of sufficient support; these mutual rights gave the surface owner access to the mine to see that his right was being maintained by the performance of the duty owing to him by the coal operator. And the courts will enforce this right of access if the mine operator denies it; this has been decided in a number of cases. In this case, the right of action arose when the mine operator failed to furnish sufficient support; that may have been more than six years before suit brought, or it may not; it may have been partly due to mining before and partly to mining afterwards, in which latter case, the action would not be barred; if wholly due to the removal of coal six years before suit brought and failure then to leave sufficient support, the action would be barred. The date of the " cave in " and partial destruction of the house, is not the date of the cause of action, that was only the consequence of a previous cause, whether one month or twenty years before, It is argued, that in some cases, the surface owner could not know by the most careful observation whether the mine owner had neglected his duty within six years. We answer, that is only one of the incidents attending the purchase of land over coal mines ; it is not improbable, that this risk enters largely into the commercial value of all like surface land in that region. But, however this may be, we hold that the miner is not forever answerable for even his own

default; further, in no case is he answerable for the default of his predecessor before his possession. Neither equity nor law demands, that any greater burden should be placed upon him than that indicated; any heavier one would encourage the purchase of surface over coal mines for speculation in future lawsuits. We cannot concur in the argument of appellant's counsel, that plaintiffs could have had no cause of action antedating their deed. By their conveyance, there passed to them all the rights of their grantor. If the cause of the injury was within six years, although at the date of the deed the damage was not susceptible of computation, yet afterwards became so by the subsidence of the surface, their right to sue was then fixed, a right which, from the nature of the case, could not have had more than a doubtful existence before the actual damage occurred. We do not think Turnpike Road v. Brosi, 22 Pa. 32, cited to sustain the argument, that the right to sue does not fall to the owner who is in possession when the result demonstrates, the cause of action arose before the date of his deed, is in point. Justice LEWIS, in that case, says : " It is certainly true that the purchaser of an estate cannot claim damages for an injury done to it before his purchase. Such claim is a chose in action, which remains in the hands of the vendor. The vendee is presumed to pay less for his estate on account of the injury, and has, therefore, no claim to recover damages for it." But he is speaking there of the damages arising from the exercise of eminent domain by turnpike and railroad companies. In all such cases the injury is palpable. When the corporation enters upon the land and makes its survey, it then appropriates; the extent of its excavations and embankments, as well as the quantity of land to be occupied, are as well known then, as months afterwards, when the work is done. There is no reason why the grantee of the land, in the interval between the appropriation and the completion of the work, should be compensated in damages, when he has probably gained a reduction in price, because of the damage equal to the amount of damage.

But none of these reasons appear in this class of cases. When the right to sufficient support has been violated, the cause of action, it is true, arises, but the owner in possession when the consequences follow, is the one who suffers. There may, in the interval, have been several owners, none of whom sustained

damage except the last; he alone has the right to sue, because to him only has passed the right to enforce by suit the collection of a damage occurring during his possession. Until they actually occur, no one can tell when they will occur, or that they ever will. Each grantee has the right to presume, that the subjacent owner has performed his legal duty, and the price, while probably somewhat depreciated by the possible risk, is not fixed on a presumption, that his land will subside because of any special failure in duty on the part of him who has taken out the coal.

There is some evidence tending to show that the "cave in" was because of work within six years by defendant, in the Mammoth seam, the first stratum of coal below the surface; also evidence tending to show very recent mining in the Wharton seam, the next one underneath the Mammoth, and that from one or the other cause, or from both combined, the subsidence was caused. On the whole case we deduce these propositions:

1. If the failure to furnish sufficient support to the surface, was from mining, either by defendant or his predecessors, more than six years before suit, the action is barred by the statute of limitations.

2. The right to sue passes to the surface owner who is in possession when the subsidence occurs, without regard to the date of his conveyance; this right is barred by the statute of limitations if the cause of the subsidence arose more than six years before suit brought.

3. Even if the main body of the coal under plaintiff's land has been mined out more than six years before suit brought, yet, if defendant has done additional mining by removal of coal left in previous work, or by robbing of pillars within six years before suit, and without such additional mining the surface would not have subsided during plaintiff's occupancy, yet if such additional work or mining hastened the result, the defendant is answerable in damages therefor.

4. If defendant, by mining within six years another underlying seam (the Wharton), whereby the pillars and support left in the seam above (the Mammoth), which otherwise would have been sufficient support to the surface, have been rendered insufficient, and the "cave in" occurred, defendant is answerable to plaintiff in damages.

5. If plaintiffs be entitled to recover, their measure of damages is the actual loss they have sustained to their land, including the building thereon, by reason of the " cave in." The difference in the market value before and after the injury in this class of cases is not the true rule ; in this case, under the evidence, perhaps it worked no injustice, but in many cases it would do so.

In a case of this character, it is of the utmost importance that the averments should be more specific as to the time the coal was mined under the lot and as to who mined it. While, probably, we would not reverse for this paucity in the statement nevertheless, it would greatly aid in a correct review of the case if all the grounds of action were clearly and more specifically stated.

But the learned judge of the court below went much further than instruction on the matter so meagerly averred and which was the only issue in the case. Evidence was offered and received, tending to show, that defendants were mining coal at a distance from the lot in question in other parts of the Hazleton mine ; from this evidence, plaintiffs argued, that even if their property had not been injured from lack of surface support in the mine underneath it, the subsidence was caused at the point under the lot, by removing lateral support at other mines some distance from the lot in question. There was some evidence given to sustain this view, and the court charged as follows :

" It would appear generally from the testimony that the injury complained of here did not come from the immediate mining and its consequences. Did it come from any other source ? Mr. McNair has testified (and he is a mining engineer and has been in charge of these mines and knows all about the inside operation of them) that there was no immediate mining under this property to the best of his judgment, since 1858. If you should find that this injury did not come from the immediate mining under the property, did it come from the general mining carried on by these defendants, in the Hazleton mines, which were generally a part and parcel of these mines ? If it did, and you should so find, then these defendants under the law would be liable in damages for the amount of the injury which you find the plaintiffs sustained."

The defendant assigns this instruction for error. When we

consider, that there is not an intimation in the statement, that any such cause for the injury ever had an existence, it is somewhat difficult to conceive how it could have been adopted as one of the grounds of recovery.   Damage for failure to furnish vertical support to the surface in mining underneath is a well known cause of injury to the surface owner; but, that an adjacent owner has, by removing lateral support, caused a vertical subsidence of the surface, is an altogether different averment of the ground of complaint.  He may be the same, or some other than the operator of the mine underneath.   His duty is not in all respects the same ; the rule for the computation of damages is not the same.   The authorities are in substantial accord on this question, though not giving the same reasons : Richards v. Jenkins, 16 Law Times Rep. 437; 17 W. R. 30; Birmingham v. Allen, L. R. 6 Ch. Div. 284; Dalton v. Angus, L. R. 6 Appeal Cases, 791; McGettigan v. Potts, 149 Pa. 158.   In the last cited case it is decided that:

" The rule that the owner is entitled to lateral support for his ground extends only to support for his ground in its natural state, and does not include such support for the protection of buildings, or other structures, placed upon it.   Where, by reason of an excavation, without negligence made by defendant on his own land, the land of the plaintiff sinks or falls away, the measure of damages is not the diminution in value of the lot of the plaintiff, by reason of the defendant, but the amount of injury actually done to the plaintiff's land.   The measure of the damages where land is taken by right of eminent domain, which is the difference between the value of the whole of the plaintiff's land before the taking and its value immediately afterwards, has no application in such case."

We do not decide, that plaintiffs might not have, originally, embraced in the same statement this cause of action, for we are of opinion they might have done so.   But they did not; they could not recover on it when they alleged but the one cause, and that a different one.   It was plainly error to admit, under this statement, the evidence tending to show a destruction of lateral support.   The defendant had not been called into court to answer such complaint, and ought not to have had a possible verdict on that ground against him.   It is now too late, under the authorities, for plaintiff to introduce this new cause of ac-

tion under an amendment, for the statute of limitations bars it.
See a full discussion of this subject by SHARSWOOD, Justice,
in Wilhelm's Appeal, 79 Pa. 134.

Appellant's third assignment of error is sustained; the others
are not; we have noticed them to the extent of pointing out
the course the trial should take, upon a new venire, so that, if
possible, we may be saved from a second review.

The judgment is reversed and a venire facias de nove awarded.