## St. John's Church v. Equitable Gas Co.

*M. E. Evashwick*, for plaintiff.

*Weis & Weis*, for defendant.

LEWIS, J., June 10, 1955.—This matter comes before the court on a motion for judgment on the plead-

ings filed by defendant, alleging that plaintiff's claim is barred by the statute of limitations.

Plaintiff's complaint sets forth in 1946, and continuing through 1947, defendant company installed a gas line on Sycamore Street in East Pittsburgh. It alleges that defendant company in laying the line broke through a solid slag base underlying the street and in backfilling failed to properly install the slag, with the result that the base became porous in 1950, and water seeped under the street causing the wall in front of the church property to bulge and push into the church yard against the building, causing damage to the building.

Suit was filed in October 1954.

Defendant contends the following cases rule that the statute of limitations began to run in the instant case from the time defendant company finished installing the pipeline in 1947: Noonan v. Pardee, 200 Pa. 474; Pantall v. Rochester & Pittsburgh Coal and Iron Company, 204 Pa. 158; Cox v. Wilkes-Barre Railway Corp., 334 Pa. 568; and Shenandoah Borough v. Philadelphia, 367 Pa. 180.

A reading of these cases reveals that they all involve damage to land caused by the removal of subsurface support due to coal mining operations, except the case of Cox v. Wilkes-Barre Railway Corporation, supra, which involved a collision between a trolley car and a passenger car, which we feel has no applicability here.

The other cases cited all lay down a principle of law which appears to be applicable to coal mining cases due to the peculiar nature of the industry.

The Noonan case, supra, states the surface owner has the right of access to the mine under his property or adjacent thereto, which the court will enforce in order to give the opportunity to determine if his subsurface rights are being invaded, and if he does not

take the opportunity to make this inspection and his land later subsides, his claim is barred after six years from the removal of subsurface support and not from the actual damage to his property. This appears to be a harsh rule, because common sense tells us that it would be a rare individual who would seek access to a coal mine to determine if the subsurface support was being denied him.

In the early days of the coal mining industry in Pennsylvania, however, in an apparent effort to encourage and not to impede the development of the industry by having the mining companies subject to suits for subsidence of the surface at any time the actual damage takes place, which may be years after the actual mining operation has ceased, the rule was laid down that any action must be brought within six years from the date of the removal of the subsurface support.

We know of no other line of cases that follows this doctrine, and we are, therefore, of the opinion that the cases cited by defendant are not applicable to the facts in the instant case.

In the instant case, unlike the coal mining case, plaintiff corporation, the adjacent property owner, certainly had no right or duty to inspect the subsurface of the street, either during the work or after the work, in order to determine if the work was properly done and was likely to injure its property.

In the coal mining cases, plaintiffs at least, in theory, had a way to protect themselves before the statute had run its course by examining the underworkings of the mine.

In the instant case, plaintiff had no possible way of knowing that defendant performed a negligent act in laying the gas line until the injury was done.

It is our opinion that the rule of law regarding the running of the statute of limitations, which governs

the instant case, is set forth in the following line of cases: Foley v. Pittsburgh-Des Moines Co. et al., 363 Pa. 1, at page 38; Pollock v. Pittsburgh, Bessemer & Lake Erie R. R. Co., 275 Pa. 467; Rudman et ux. v. City of Scranton et al., 114 Pa. Superior Ct. 148.

In the Foley case, supra, defendant company completed the construction of a gas tank in 1943, and it blew up on October 20, 1944, resulting in the death of plaintiff's husband. Action for the wrongful death was instituted within a year of the accident on October 20, 1944. Defendant contended that the statute of limitations, which was a year in this case, began to run from the date the defective tank was completed.

In holding that plaintiff was not barred by the statute of limitations, the court said:

"It would seem elementary, however, that a cause of action cannot accrue until an injury is actually inflicted upon the person bringing the suit, and certainly until October 20, 1944, no action of any kind could have been brought by the present plaintiff; it is inconceivable that she should be barred by lapse of time before the time when she could have instituted a suit. It is true that the running of the statute is not postponed by the failure of a plaintiff to *realize* that he has suffered damage, or by the belated appearance of a disease or infirmity which was not revealed when the injury was actually inflicted: Bernath v. LeFever, 325 Pa. 43, 46, 189 A. 342, 343. But, as already stated, a right of action accrues only when injury is sustained by the plaintiff,—not when the causes are set in motion which ultimately produce injury as a consequence."

In the Pollock case, supra, plaintiff, a passenger in an automobile, was injured when the public road on which he was traveling gave way, defendant having removed the lateral support. The excavation removing the lateral support was made more than 20 years before the accident.

Defendant company pleaded the statute of limitations, and relied on the mining case of Noonan v. Pardee, supra, as its precedent.

Chief Justice Kephart, in holding the statute did not begin to run until the roadway gave way and plaintiff was injured, pointed out the difference between the mining case and the other line of cases wherein the statute does not run until the actual injury occurs. At page 472, the court said:

"We are asked to extend the doctrine of Noonan v. Pardee, 200 Pa. 474, 483, to cover the facts of this case; as stated in the brief of appellant's counsel, 'The only question to be determined . . . is whether . . . plaintiff's cause of action . . . is not barred by the statute of limitations,' as ruled by the cited case. That case covered subjacent support and, while much of the reasoning, the general characteristics of this support and the governing rules of law may be applied to lateral support, there is a substantial difference which must not be overlooked. Undoubtedly, since this court has so held, there is a duty resting on the owner of a superincumbent estate to act when there is an intermeddling with the subjacent estate; the upper owner is in law bound to take notice of this when it occurs. But here the adjoining owners have no such interrelated rights as would compel an owner to know just what the adjoiner is going to do or is doing, its effect when completed, and whether, in the course of time, it might possibly result to his injury or the injury of his property. At the time this excavation was made it was possible for defendant to so construct its work that no damage would result, or the stratification of earth might have been such as, in its judgment, to sustain the highway. If the municipality had been sued, upon what legal theory or rule could a recovery have been predicated? The excavation was lawful; it was not on or related to the adjoiner's property; there was no

damage when the excavation was completed, and there could be none until there was an invasion of the municipality's premises. That invasion might never occur. It is admitted this plaintiff may rightfully sue in this action. But his infant child was in the automobile with him; if it had been injured, upon what possible theory could it have sustained a right of action at the time the excavation was made (the child was not then born) ?"

In the Rudman case, supra, the wife-plaintiff had sustained personal injuries due to a depression left in the street by the water company that failed to properly backfill after digging a tunnel under a brick gutter. The filling and repairing of the street occurred more than two years prior to the accident. In holding that the lower court erred in concluding that the statute of limitations began to run from the date of the filling and repairing of the street, Justice Parker said:

"The action accrues when the damage is sustained by the plaintiff, not when the causes are set in motion ultimately producing injury as a consequence."

It becomes clear, therefore, from the cases above cited that only in cases involving damages to land arising from the taking away of the subsurface support does the statute of limitations begin to run from the date of the negligent act without any apparent injury accompanying it.

We are, therefore, of the opinion that defendant's motion for judgment on the pleadings should be dismissed.

### Order of Court

And now, to wit, June 10, 1955, after oral argument and reading of the briefs submitted, it is ordered and decreed that defendant's motion for judgment on the pleadings be dismissed.

Eo die, exception noted to defendant and bill sealed.