Albert H. COLE, Fred Lindsey and Luther E. Woods, Trustees of the Cole & Crane Real Estate Trust, Appellants,

v.

EASTERN GAS AND FUEL ASSOCIATES, a Massachusetts voluntary association, Appellee.

No. 8960.

United States Court of Appeals Fourth Circuit.

Argued June 5, 1963.

Decided Aug. 26, 1963.

Selden S. McNeer, Jr., and S. S. McNeer, Huntington, W. Va. (Campbell, McNeer, Woods, Bagley & Emerson, Huntington, W. Va., on brief), for appellants.

John O. Kizer, Charleston, W. Va. (Woodroe, Kizer & Steed, Charleston, W. Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges

BOREMAN, Circuit Judge.

In this action instituted in the District Court for the Southern District of West Virginia, the two original plaintiffs were (1) Western Pocahontas Cor-

poration and (2) Albert H. Cole, Fred Lindsey and Luther E. Woods, Trustees of the Cole & Crane Real Estate Trust, hereinafter referred to as Cole & Crane. Each plaintiff sought, respectively, to recover damages from Eastern Gas and Fuel Associates, hereinafter referred to as Eastern, for a subterranean trespass and the wrongful mining and removal of coal from its land, and statutory penalties [1] for mining coal within five feet of the southerly boundary line of its land. The District Court granted Eastern's motions for summary judgment and Cole & Crane alone prosecutes this appeal.

Eastern is the lessee of 6217.27 acres of coal land situate in Boone County, West Virginia, known as the Shephard tract, under leases originally made to it in 1928 and it has been conducting shaft mining operations in the Hernshaw seam of coal on that tract since 1928. Cole & Crane owns a tract of land containing 520 acres which adjoins the Shephard tract on the north. Western Pocahontas owns a tract of 1400 acres which adjoins the Shephard tract on the north and adjoins the Cole & Crane 520-acre tract on the east. The northerly line of the Shephard tract is commonly known as the Rutter and Etting line, hereinafter called the R & E line. It is the common property line between the Shephard tract and the 520-acre Cole & Crane tract, and also the common property line between the Shephard tract and the 1400-acre tract of Western Pocahontas.

During the period from 1943 to June 30, 1947, Eastern conducted coal mining operations on the Shephard tract immediately adjacent to the R & E line in the area of the Cole & Crane tract as that line was located by Eastern on its own maps. In 1947 Western Pocahontas had leased its coal lands to Eastern. By lease agreement dated January 1, 1949, Cole & Crane leased its 520-acre tract and the underlying Hernshaw seam to Eastern for coal mining purposes and, pursuant thereto, from July 1949 to June

11, 1953, Eastern conducted mining operations in the Hernshaw seam on the Cole & Crane tract and adjacent to the R & E line as plotted by Eastern.

The District Court's opinion,[2] to which reference is here made, contains a recital of certain pertinent facts which are briefly hereinafter stated.

During the time of the mining operations last mentioned above, pursuant to the provisions and requirements of the Cole & Crane lease, Eastern submitted quarterly to the lessors copies of mine maps reflecting the mining operations of Eastern on the Cole & Crane tract. All of these mine maps showed the location of the R & E line as it had been plotted by Eastern for many years. Prior to 1960, the mine maps submitted by Eastern to Cole & Crane indicated the location of the common property line between the Cole & Crane 520-acre tract and the Western Pocahontas 1400-acre tract in pencil, which penciled lines were changed from time to time by Eastern and were assumed by Cole & Crane to represent only the tentative or approximate location of the dividing line, particularly in view of the fact that at those times no mining operations were being conducted by Eastern in the vicinity of the dividing line between Cole & Crane and Western Pocahontas. However, in February 1960 a mine map was received by Cole & Crane from Eastern upon which this dividing line was drawn in ink, thus indicating to Cole & Crane that Eastern intended to show the line's exact location. As the southern end of the common property line between Cole & Crane and Western Pocahontas appeared to extend southerly over and beyond the R & E line some distance into the Shephard tract, some question was raised in the minds of Cole & Crane engineers as to the accuracy of the location of the R & E line as it had been shown by Eastern. Accordingly, in November 1960, after conferences between and among the mining engineers regularly employed by Western Pocahontas, Cole

1. W.Va.Code, ch. 37, art. 5, § 1 (Michie 1961).

2. Western Pocahontas Corp. v. Eastern Gas & Fuel Associates, 213 F.Supp. 657 (S.D.W.Va.1963).

& Crane and Eastern, Cole & Crane employed J. M. McCoy, a registered mining engineer, to make an accurate field survey in the area to determine whether or not Eastern, in its subterranean mining operations in the Shephard tract, had trespassed and encroached upon the Cole & Crane tract. After conducting an extensive and time-consuming survey, including much record research and field work, and correlating his findings with the below-surface mining operations and maps of Eastern, McCoy reported to Cole & Crane on August 16, 1961, that the *true* R & E line was roughly 160 feet south of the R & E line as theretofore located by Eastern. As a result of this alleged error in the location of the R & E line, the engineer's report disclosed that Eastern, during its mining operations on the Shephard tract, had trespassed and encroached upon the Cole & Crane tract to the extent that it had mined and removed approximately eighteen acres of coal for which Cole & Crane had not been paid.

The District Court, 213 F.Supp. 657, at 661, stated:

"The leases between the plaintiffs [Cole & Crane and Western Pocahontas] and Eastern required that the lessee employ a competent mining engineer to make periodic mine surveys giving directions and courses of entries and other particulars of the mining operation, and to make accurate maps thereof which would be subject to the inspection of the lessors. The maps furnished by Eastern to the plaintiffs were made pursuant to this requirement of the leases and both Western Pocahontas and Cole and Crane relied upon the maps as certified. *While these maps and surveys disclosed the pattern and extent of the mining operations, they could not on their face disclose any possible encroachment. To make such a determination it would have been necessary to conduct a field survey on the surface and correlate it with the mining operations as shown by the maps in the manner employed*

*by Mr. McCoy in 1961.* Under their leases, Western Pocahontas and Cole and Crane also had the privilege of making visual inspections of Eastern's mining operations in the Hernshaw tract, and such inspections were made by representatives of the lessors commencing soon after the inception of their respective leases and continuing during the entire course of mining operations under said leases. *The primary purpose of these inspections was to verify the fact that the lessee was removing all mineable coal of workable thickness and was otherwise using careful and workmanlike mining techniques. Again, while these visual inspections would disclose the physical removal of the coal and the manner in which it had been performed, they would not disclose any encroachments unless they likewise were correlated with a surface survey.*" (Emphasis supplied.)

As a result of the reported findings of McCoy, the original plaintiffs instituted this action on December 28, 1961. Eastern moved for summary judgment on the ground that the period of the statute of limitation applicable to an *action for damages,* based upon subterranean trespass and for the wrongful mining and removal of coal, is *two years,* and that the period of the statute of limitation applicable to *actions for penalties* imposed by the West Virginia statute is *one year.* Upon oral argument before this court, counsel for Cole & Crane expressly abandoned its appeal from the District Court's order granting summary judgment with respect to the claim for statutory penalties, admitting that Cole & Crane had actual knowledge of the alleged wrongful mining more than one year before instituting this action. Therefore, the only issue now before this court for determination is the correctness of the District Court's grant of summary judgment with respect to the principal claim for damages. The parties are agreed that the period of the applicable West Virginia statute of limitation of actions is two

years.[3] Therefore, the question for determination is whether the District Court erred in applying the two-year statute of limitation, as a matter of law, in granting Eastern's motion for summary judgment. We conclude that it did.

It is apparently undisputed that the trespass, if any, occurred more than two years prior to December 28, 1961, the date of the institution of this action, and prior to the execution of the Cole & Crane lease to Eastern on January 1, 1949. The District Court correctly stated the applicable law as follows:

"In the area of subterranean trespasses West Virginia subscribes to the rule prevailing generally in this country to the effect that the statute of limitations begins to run only from the time of actual discovery of the trespass, or the time when such discovery was reasonably possible. Petrelli, et al. v. W[est] Va.-Pittsburgh Coal Co., 86 W.Va. 607; 104 S.E. 103. And in cases such as this where the defendant pleads the statute of limitations as an affirmative defense, the burden rests upon the defendant to show by a preponderance of the evidence that the encroachments were made prior to the statutory period, and also that the plaintiffs either had notice of the encroachment or that discovery thereof could have been made by the use of reasonable diligence at some time prior to such period. See Knight et al. v. Chesapeake Coal Co., 99 W.Va. 261, 128 S.E. 318." 213 F.Supp. at 661.

The plaintiff, Cole & Crane, contended below, as it does here, that whether it knew, or in the exercise of reasonable diligence should have known, of the alleged trespass is a question of fact and that the existence of this factual issue precludes summary disposition under Rule 56, Federal Rules of Civil Procedure. The District Court took the view that if this question were being considered in light of the facts as they existed prior to the execution of the Cole & Crane lease on January 1, 1949, the court would be inclined to agree with the plaintiff's contention because plaintiff then "had no available means to ascertain whether such trespass had occurred." But the court explained that, after the execution of the lease, Cole & Crane had the right and opportunity to enter the mine workings and to observe and inspect every aspect of the operations; that Cole & Crane's representatives made numerous visual inspections of Eastern's operations after plaintiff's lease was executed; that plaintiff had full knowledge of the physical taking of the coal through such inspections and from maps furnished by Eastern which demonstrated the operation as extended from time to time; that the delay in instituting this action was due to the fact that, at least until the year 1960, Cole & Crane labored under a misconception as to the true location of the R & E property line. The court then concluded:

"* * * On these facts the question is presented whether a party who has full knowledge of the physical mining of the coal under his land, but who is unaware that it constitutes a trespass by reason of his ignorance as to the location of his property line is entitled to the benefit of the application of the Petrelli doctrine relative to the running of the statute of limitations. In my opinion there is no good reason for the extension of the principle of the Petrelli case to such a situation." 213 F.Supp. at 662.

In determining as a matter of law that Cole & Crane knew, or should have known, of the taking of the coal and the extent thereof upon acquisition of the right to visually inspect Eastern's mining operations in the Hernshaw seam, the District Court placed great emphasis and reliance upon the case of Lewey v. H. C. Fricke Coke Co., 166 Pa. 536, 31 A. 261, 28 L.R.A. 283 (1895), which was cited by the Supreme Court of Appeals of

3. W.Va.Code, ch. 55, art. 2, § 12(a) (Michie 1961).

West Virginia in the Petrelli case.[4] In the Lewey decision the Pennsylvania court held that the statute of limitations was tolled *as a matter of law* and was not available as a defense. We do not, however, construe that decision to mean that unless *all* of the factors which were present in that case are present in the instant case, the doctrine of the use of reasonable diligence to discover the trespass is here inapplicable. In effect, the lower court appears to have reasoned that, since discovery of the subterranean trespass was held in the Lewey case to have been impossible in view of the fact that the plaintiff there had no right of access to the defendant's mining operations on the adjacent tract, the Supreme Court of Appeals of West Virginia must have intended that the doctrine of the Petrelli decision should apply only where the mining operations are being conducted exclusively on an adjoining tract and the plaintiff, whose coal is wrongfully removed, has no right to visually inspect the mine.

We do not think that the Petrelli decision should be so narrowly construed and restricted, particularly in view of a later decision of the Supreme Court of Appeals of West Virginia in the case of Knight v. Chesapeake Coal Co.,[5] which was cited by the District Court as hereinbefore disclosed.

In the Knight case, the plaintiffs owned lands adjacent to lands upon which the defendant was conducting coal mining operations and the plaintiffs were fully aware of these operations. In fact, one of the plaintiffs had worked as a miner in the defendant's mines during parts of the years 1917, 1918 and 1919. There was no evidence to show plaintiffs' actual knowledge of any encroachments until June 1919. In May of that year, one of the plaintiffs received information that the defendant was encroaching and, shortly thereafter, caused a survey to be made which disclosed the coal mining subterranean trespasses. Suit was instituted on January 2, 1920, and the defendant filed a plea of the applicable statute of limitations. The court held that the defendant had not sustained its burden of proving its affirmative defense of the statute of limitations to the extent of establishing by a clear preponderance of the evidence that the plaintiffs had knowledge of the subterranean encroachments, or that *by the use of reasonable diligence they could have had such knowledge,* for more than the statutory period prior to instituting suit. In referring to the fact that one of the plaintiffs had worked in defendant's mine during a portion of the critical period, the court said that " * * there is nothing to indicate that he learned, or by the use of reasonable diligence could have learned, of the excavations [encroachments] while so employed." 99 W.Va. at 264, 128 S.E. at 319. The Petrelli decision was cited with approval.

The District Court cited another Pennsylvania case, Noonan v. Pardee, 200 Pa. 474, 50 A. 255, 55 L.R.A. 410 (1901), and quoted therefrom. There the plaintiff was the owner of only the surface of the land, and the owner of the underlying minerals mined the coal. The court noted that the surface owner had the right to subjacent support and the owners of the coal had the legal right to mine it, and these mutual rights gave the surface owner access to the mine to see that his right was being maintained by the performance of the duty owing to him by the coal operator. However, the removal of adequate surface support was not discovered by the plaintiff until the surface subsided. The court held that the cause of action accrues when the mining operator fails to maintain support for the surface and not when the removal of support is discovered upon subsidence; furthermore, although in some cases the surface owner could not, by the most careful observation, know that the mine operator had breached his duty, the possibility that subjacent support has not been maintained is only one of the in-

---

4. Petrelli v. West Virginia-Pittsburgh Coal Co., 86 W.Va. 607, 104 S.E. 103 (1920).

5. 99 W.Va. 261, 128 S.E. 318 (1925).

cidental risks attending the purchase of the surface of lands over coal mines. We do not think that the rationale of that case is applicable here.

It goes without saying, and no authority need be cited for the proposition, that Eastern had no right to mine coal on the Cole & Crane tract or within five feet of the common property line of that tract and the Shephard tract prior to January 1, 1949. Thereafter, by the terms of its lease Eastern had such right and, at the same time, Cole & Crane had the right to inspect the mining operations not only on its own lands but also on the Shephard tract. Cole & Crane's complaint charges encroachment and Eastern, in its answer, denies encroachment and asserts that its location of the R & E line is correct. In considering the motion for summary judgment, the District Court assumed that the plaintiff's asserted location of the R & E line was correct. Unless such an assumption were made, there would be no possibility of a trespass.

But it appears from the record below that it was Eastern's duty and obligation, under the terms of its lease, to provide Cole & Crane with true and accurate maps of the mine workings, prepared and certified by Eastern's mining engineer. The common property line between Cole & Crane and Western Pocahontas was shown in pencil by Eastern's engineers, although the correctness of the location and length of that line was materially relevant and pertinent to a determination of the true location of the R & E line.

The District Court determined that a subterranean trespass could be ascertained only by an accurate field survey, by the location of property lines on the surface and then correlating the findings with the underground mining operations and maps. The court stated as a fact that Cole & Crane *did* rely upon the accuracy of the maps furnished by Eastern. In affidavits filed on behalf of Cole & Crane in opposition to the motion for summary judgment, it is asserted that in the southern West Virginia coal fields the coal lessor does not make field surveys and the obligation to make such surveys

is upon the lessee; that it is customary for the lessor to rely upon the maps furnished by the lessee, certified as true and correct by a mining engineer; that Cole & Crane had a right to rely upon such maps furnished by Eastern as being accurate; that Cole & Crane had no occasion to do any field surveying or other checking which would lead to discovery of the trespass and encroachment.

An examination of the mining maps filed as exhibits discloses that the entire mine workings on the Shephard tract and the Cole & Crane tract are honeycombed with "rooms," pillars of coal having been left standing and unmined according to usual mining practices. The maps show a veritable maze of rooms or spaces where the coal had been removed and surely a visual inspection of the workings would reveal nothing as to the subsurface location of property lines. The whole dispute turns upon the true location of the R & E line, whether as claimed by Cole & Crane or by Eastern. Mining engineer McCoy found as a result of his survey that Eastern had for years incorrectly shown the location of the R & E line on its maps upon which Cole & Crane relied.

As we have pointed out, it was Eastern's legal duty and obligation to confine its mining operations to the Shephard tract before acquiring the right to mine adjacent lands. If, in fact, there was a trespass as alleged, it may have been unintentional and the result of an honest mistake, or it may have been willful. But an unintended trespass is not excusable in law except to the extent that absence of willfulness may importantly bear upon the amount of damages to be awarded. See Petrelli v. West Virginia-Pittsburgh Coal Co., supra, 86 W.Va. 607, 104 S.E. 103 (1920).

Whether, under all the facts and circumstances of this case, Cole & Crane had a right to rely upon the accuracy of the maps furnished by Eastern, and whether such reliance upon these certified maps constituted a breach of a duty of Cole & Crane to use due diligence to discover the alleged trespass by causing a field survey to be made prior to the time

its suspicions were first aroused by Eastern's obvious change of the location of pertinent property lines on such maps, we think, are questions of material fact to be determined, as any other fact, from a preponderance of the evidence. It appears that the plaintiff was denied its day in court by the grant of summary judgment.

The case will be remanded to the District Court for further proceedings consistent with the views herein expressed.

Reversed and remanded.