## S. W. HILL ET AL. v. ARIO PARDEE ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY.

Argued April 15, 1890.
Re-argued June 4, 1891—Decided October 5, 1891.

(a) Plaintiffs declared in case against the lessor and lessee of a coal mine, for a joint act in unlawfully and negligently removing the coal without leaving sufficient surface support, whereby the plaintiffs, as owners of the surface, were injured:

1. The evidence, even on the part of the plaintiffs, showing that the coal mine had been demised to the lessee before any of the acts claimed to have caused the injury were done, and that all such acts were done by the lessee, prima facie the lessor was not liable.

2. Nor was the lessor of the coal liable in this action, under the covenant of its predecessor in title to the plaintiffs, to make good all damages done to the plaintiffs' lot by mining operations underneath it, for that covenant was not declared upon as the basis of the action.

3. If such covenant had been declared upon, then the lessor and lessee of

Statement of Facts.

the coal would have been improperly joined as defendants, the lessee, whose liability arose from a tort pure and simple, not being a party to the covenant: Per Mr. Justice MITCHELL.

4. Other questions in the case,—the extent to which the obligation of lateral support was applicable in favor of plaintiffs acquiring title after the operation causing the injury had been completed, and the effect of the statute of limitations,—not decided.

Argued before STERRETT, GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.; re-argued before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 165 July Term 1890, Sup. Ct.; court below, No. 85 October Term 1885, C. P.

On June 9, 1885, S. W. Hill and T. J. Hill, with notice that the plaintiffs would claim damages up to the time of trial, brought trespass on the case against A. Pardee & Co. and the Lehigh Valley Railroad Company, filing a narr averring plaintiffs' ownership of a certain messuage and premises in the borough of Hazleton, whereon was erected a frame grist-mill, owned by and in the possession of the said plaintiffs and " of great value, to wit, of the value of twelve thousand dollars," and charging:

" Yet the said defendants, well knowing the said premises, while the said plaintiffs were owners and possessors of said lot and mill as aforesaid, to wit: on the first day of January, 1883, unlawfully, wilfully, maliciously and negligently removed from under and contiguous to the said mill and lot aforesaid the coal, without leaving any sufficient support for the surface of the said lot in which said mill was situated, as the said defendants ought and were legally bound to do; whereby the said surface of the said lot fell and settled, thereby injuring, damaging and destroying the said mill, and rendering the same, as well as the lot aforesaid, valueless ; to the damage of the said plaintiffs of fifteen thousand dollars.　Hence the suit."

The defendants pleaded not guilty, and the statute of limitations.

At the trial, on May 17, 1889, evidence was adduced tending to show that in 1837 the Hazleton Coal Company began the mining of anthracite coal under what was then a forest but has since become the borough of Hazleton; that in 1840

Charge of Court below.

the coal company leased the coal under these lands to Ario Pardee and others, who, as the firm of Pardee, Miner & Co., mined coal for a period of three years, when the firm was changed by a change of members to A. Pardee & Co. Up to 1844, the rental paid by the lessees to the lessor was a share of the coal mined; from that time to 1868, a stated royalty per ton was paid.

On July 19, 1867, the Hazleton Railroad Co., formerly the Hazleton Coal Co., for the consideration of six hundred dollars, conveyed the real estate alleged to have been damaged to Charles Myers, in fee, reserving the coal and other minerals unto the grantors, " their successors or assigns," and covenanting in the deed of conveyance that the " earth, covering such coal and other minerals, shall not be in any manner cut, broken or displaced, and that every damage which may be done to the said lots or the buildings erected thereon, by the exercise of the mining privileges herein reserved, shall be made good by the Hazleton Railroad Company, their successors or assigns."

On May 4, 1868, in pursuance of a special act of assembly, the Hazleton Railroad Company, by articles of merger filed in the office of the secretary of the commonwealth, was consolidated with the Lehigh Valley Railroad Company; and in 1873, the title of Charles Myers under the conveyance of July 19, 1867, became vested in the plaintiffs, who built a frame gristmill on the property.

It was further shown that, prior to 1858, A. Pardee & Co. had constructed a gangway in the mine about two hundred and fifty feet from the plaintiffs' mill. After 1858, no mining was done, as was claimed, under said property or nearer to it than the said gangway. On October 20, 1883, by reason of the previous removal of pillars in the mine, there was a " squeeze " in said gangway, which, as was claimed, caused a crack on the surface of the ground extending several hundred feet and across the plaintiffs' property, resulting in the injuries for which this suit was brought.

At the close of the testimony, the court, RICE, P. J., charged the jury in part as follows:

At the time of the accident, or squeeze, or crush, as it may be designated, the plaintiffs were the owners of the surface, and

Charge of Court below.

the Lehigh Valley Railroad Company, with which the Hazleton Railroad Company had become consolidated or merged, was the owner of the underlying coal; and it would seem, from the testimony in the case, that they were also the owners of the coal underlying the adjacent surface.

The rights of these people have been pretty clearly defined by the decisions. While the owner of the coal, as the owner, as well as by virtue of the reservation in his deed, has the right to mine and take out the coal, yet in the absence of any agreement to the contrary, it is his duty to leave sufficient supports for the surface. It is not a question of careful mining or of negligent mining, but whether the supports which are left are sufficient to maintain the surface. Or, to put the principle in another way, it is held that the owner of the underlying coal owes a duty to the owner of the overlying surface, of sufficient support. Therefore, if by reason of his taking out the coal, or if by reason of his failure to put proper supports in the place of the coal which is taken out, the surface subsides and the owner of the surface suffers injury, he is entitled to recover such damages as he may have sustained, and this in the absence, too, of any contract to that effect.

This, it seems to us, disposes of the proposition submitted upon the part of the defendants, that if you should find that the injury was caused by mining which had taken place before the plaintiffs bought, they would not be entitled to recover. We negative that proposition; because, as we understand the law, the right of action for any injury which may have occurred to the surface by reason of insufficient support, did not accrue until the injury took place, and therefore, there could have been no right of action in anybody until this twentieth of October, 1883; and then the right of action was in the person or persons to whom the duty of support to the surface was owing.

It may be suggested that, inasmuch as the coal under the buildings of the plaintiffs was left, and the coal under at least the most of the lot was left, the defendants cannot be held liable by reason of a subsiding of the surface or a squeeze, in another portion of the mines. We can readily conceive of a case where that would be so; but, under the testimony in this case, we do not think that the fact that the coal under the plaintiffs' lot was not mined out, would relieve the defendants

Arguments.

from liability for the subsidence of the surface in another portion of the same mine with which this was connected. You will then inquire, gentlemen of the jury, whether or not any injury has been suffered by the plaintiffs, by reason of the defendants' failure to perform the legal duty which we have instructed you rested upon them. . . . . .

We will now answer the points submitted by defendants' counsel:

1. That if the jury find from the evidence that the injury complained of was occasioned by mining which had been done before the Hills purchased the lot in 1873, they cannot recover damage in this action.

2. If the jury find that the injury complained of was occasioned by the mining in the upper levels, done at any period of six years or more before such injury, the statute of limitations will prevent any recovery in this action.

Answer: Defendants' first and second points have already been substantially answered in the negative in our general charge, and are now specifically negatived.[1] [2]

4. There can be no recovery against the Lehigh Valley Railroad Co., under the evidence.

Answer: We answer that point in the negative. It is a purely legal question, and we shall not undertake to discuss it at this time. If it is desired to have this legal question considered, either by this court or by the court above, the record is in such a condition that it may be done more satisfactorily than it can be now. We answer the point in the negative.[3]

—The jury returned a verdict in favor of the plaintiffs for $3,400. A rule for a new trial having been discharged, judgment was entered on the verdict on July 5, 1889; whereupon the defendants took this appeal, assigning for error

1–3. The answers to the defendant's points.[1 to 3]

*Mr. H. W. Palmer, Mr. George H. Troutman* and *Mr. J. Vaughan Darling* (with them *Mr. G. L. Halsey*), for the appellants.

Upon the first and second assignments, counsel cited: Bonomi v. Backhouse, 9 H. L. 502; Humphries v. Brogden, 12 Q. B. 739; Nicklin v. Williams, 10 Exch. 259; Sporr v. Green, L. R. 9 Exch. 99; opinion dissenting, in Sanderson v. Coal Co.,

Opinion of the Court.

6 W. N. 101, subsequently followed in Penna. Coal Co. v. Sanderson, 113 Pa. 126. Upon the second assignment: Offerman v. Starr, 2 Pa. 394; Little Schuylkill Co. v. Richards, 57 Pa. 142.

*Mr. Q. A. Gates* (with him *Mr. A. R. Brundage*), for the appellees.

Counsel cited: (1, 2) Bainbridge on Mines, 433, 434, 475, 476; 2 Add. on Torts, Dudley & B. ed., 1163; Bonomi v. Backhouse, 9 H. L. 503 (101 E. C. L. R. 970); Whitehouse v. Fellows, 10 C. B., N. S., 765; Richardson v. Colliery Co., L. R. 14 Q. B. Div. 125; Neiss v. Foster, 64 Pa. 495; Tenbrooke v. Jahke, 77 Pa. 392; Horner v. Watson, 79 Pa. 243; Jones v. Wagner, 66 Pa. 429; Coleman v. Chadwick, 80 Pa. 81; Carlin v. Chappel, 101 Pa. 348; Williams v. Hay, 120 Pa. 485; Scranton v. Phillips, 94 Pa. 15; Hanna v. Holton, 78 Pa. 334. (3) Lindeman v. Lindsey, 69 Pa. 93; Union Petroleum Co. v. Petroleum Co., 72 Pa. 173; Bombaugh v. Miller, 82 Pa. 203; Bainbridge on Mines, 497.

OPINION, MR. JUSTICE MITCHELL:

This action joins two defendants whose liability may be essentially different. The declaration is in case for a joint act in unlawfully and negligently removing the coal from under plaintiffs' mill, without leaving sufficient support, whereby the surface of the land settled with resulting damage to the mill. But the evidence, even on the part of the plaintiffs, showed that the railroad company had leased the land to Pardee, the other defendant, before any of the acts which were claimed to have caused the injury were done, and that all of such acts were done by Pardee. Prima facie, therefore, the railroad company was not liable under the evidence in this action: Offerman v. Starr, 2 Pa. 394; and the defendants' fourth point should have been affirmed.

It is argued now that the railroad company is liable under the covenant by its predecessor, to make good any damage done to the surface of plaintiffs' lot by the mining operations conducted underneath it. But this covenant is not declared upon as the basis of the action, and if it had been, then Pardee & Co. would have been improperly joined, for they were not parties

Syllabus.

to the covenant. The cases, like Horn v. Miller, 136 Pa. 640, which hold that trespass, or trespass on the case, is the proper remedy for the disturbance of a right, even where such right has been acquired by grant or covenant, do not apply, nor do they authorize the joinder of parties where the liability of one arises if at all from covenant, and that of the other from a tort pure and simple.

The other questions in the case, the extent to which the obligation of lateral support applies in favor of a party acquiring title after the operation causing the injury has been completed, and the statute of limitations, can be better determined when plaintiffs have elected which of the defendants to pursue in the present action.

Judgment reversed and venire de novo awarded.