## Girard Estate

Before Sinkler, P. J., Klein, Bolger, Hunter and Boland, JJ.

*Joseph P. Gaffney*, for petitioner, City of Philadelphia.

*Raymond J. Bradley*, for the city controller.

*Harpur M. Tobin*, amicus curiæ.

BOLGER, J., November 24, 1950.—The Board of Directors of City Trusts charged with the adminis-

tration of the estate of Stephen Girard, deceased, resolved on May 19, 1950, to sell the 481 houses built and owned by it in the southern section of Philadelphia, at prices established at a figure representing approximately the medium of appraisals by the Federal Housing Administration and by the Veterans Administration, upon certain terms and conditions, giving preference for a period of 30 days to present tenants, all sales to be subject to the approval of this court.

This resolution was supplemented by a second resolution adopted May 19, 1950, wherein the board stated, inter alia, that it is impractical or impossible to use or to convert these dwellings, or the land on which they stand, for other than residential purposes; that not only would the sales be to the best interests of the trust, but that the failure or neglect to sell them at this time for the prices and upon the terms stated will result in endangering the trust structure and will impair and greatly reduce the fulfillment of the primary object of testator, to wit, the maintenance and full operation of Girard College.

A petition was filed on behalf of the Board of Directors of City Trusts under section 2 of the Revised Price Act of June 7, 1917, P. L. 388, 20 PS §1564, and article 9, sec. 963 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.963 for leave to sell premises 2532 South Colorado Street, one of the properties involved, for $9,000 to James W. Aikens and Edith M. Aikens, his wife.

Since the determination of this petition will dispose of the legal problems involved in like petitions which will be presented hereafter for the sale of all of the other properties, the court adopted the following procedure. On July 20, 1950, we referred the petition to Bolger, J., who appointed Harpur M. Tobin, Esq., as amicus curiæ, and directed public hearing be held Wednesday, August 16, 1950, at 11 a. m., in Room 426, City Hall, Philadelphia.

The decision with respect to the present petition involves the first sale of a large and valuable portion of real estate held in this trust, and in view of the fact that the Board of City Trusts may apply in the future for leave to sell other parcels in Philadelphia it is deemed advisable to examine the subject at length.

The problem presented is not only whether the proposed sale of these properties is for the best interests of the estate, but also whether the doctrine of cy pres should be applied, under which it must be found as a fact and as a conclusion of law that the present situation is impractical, that the proposed sale is the only recourse open to the Board of City Trusts under the present circumstances in order to preserve the purposes of the trust, and that failure to sell them will impair the trust. This question arises because of the peculiar provisions of Stephen Girard's will. In clause 22 thereof he prohibited the sale of any of his real estate situated in Pennsylvania, and directed that it should, at all times, be rented to good tenants upon leases not exceeding five years. He further provided as to real estate situated in Philadelphia that it might be improved and repaired out of income from real estate situated elsewhere in Pennsylvania. These restraints upon alienation were advanced against the invalidity of the will in Philadelphia v. Heirs of Stephen Girard, 45 Pa. 9 (1863), wherein the court held that they did not affect the validity of the trust, since they applied only to the mode of administration. In re Application of the City of Philadelphia, 2 Brewster 462, the court authorized leases of coal lands for 15 years, pointing out that no tenants could be obtained for a less period, and therefore the trust purposes would be gravely endangered if the five-year limitation prevailed. The court held that the doctrine of cy pres applied, and in so doing, gave the definition of cy pres as enunciated by Lowrie, P. J., in Philadelphia v. Heirs of Stephen

Girard, supra: " '. . . when a definite function or duty is to be performed, and it cannot be done *in exact conformity* with the scheme of the person or persons who have provided for it, *it must be performed with as close approximation* to the scheme as reasonably practicable; and if so, of course it must be enforced'." (p. 480)

The legislation abolishing restraints on alienation includes section 1 of the Revised Price Act, 20 PS §1561, which provides that:

A court shall authorize the sale of real estate when it is "of the opinion that such a decree will be to the interest and advantage of all those interested therein and without prejudice to any trust, charity, or purpose for which the real estate . . . shall be held . . ."

Article 9, sec. 963, of the Fiduciaries Act of 1949, 20 PS §320.963, provides that a court may authorize the sale of real estate even though the trustee is denied the power to do so by the trust instrument, "whenever the court shall find that such sale . . . is for the best interests of the trust." See Toner's Estate, 260 Pa. 49; Nauman v. Weidman, 182 Pa. 263; Burton's Appeal, 57 Pa. 213; Lehigh University v. Hower, 159 Pa. Superior Ct. 84.

In view of the peculiar provision of Girard's will which favors the Philadelphia real estate over that held elsewhere in Pennsylvania, the Philadelphia real estate is placed in a special category. It is clear to us that this is added reason why the foregoing legislation must be interpreted in the light of the cy pres doctrine, and therefore, we must find that the retention of the real estate, the subject matter of the instant petition, has become incompatible with the maintenance and development of Girard College, which is clearly the dominant purpose of the trust. While the present tenants of the properties, some of whom appeared and protested the petition of the board for leave to sell, might

be considered a matter of some importance because Girard favored his Philadelphia real estate over that situated elsewhere, nevertheless, this aspect of the case, under the present circumstances cannot be regarded as of anything but minor importance. If the retention of the properties will result in such losses to income, and possibly to principal, as will reasonably result in a reduction in the number of boys that can be educated at the college, or in reducing the facilities necessary for the maintenance of the college in accordance with the terms of the will, then all other considerations must be disregarded.

There were present at the hearing on August 16, 1950, Joseph P. Gaffney, Esq., representing the City of Philadelphia, Trustee under the will of Stephen Girard, deceased, acting by the Board of Directors of City Trusts; Raymond J. Bradley, Esq., for Joseph S. Clark, Jr., city controller, and Harpur M. Tobin, Esq., amicus curiæ. The Board of Directors of City Trusts produced as witnesses William Henry Gillam, Jr., Albert M. Greenfield, and Lewis L. Tanguy. Mr. Gillam is general manager of the Board of City Trusts and manages the properties in question. He testified that the 481 houses were built in 10 operations, the first of which was completed in 1906 and the last of which was completed in 1916. These properties have had, until recently, the peculiar advantage of being supplied by a heat furnished by a central heating system built and operated by the board of trustees. The net income from the operation of these 481 houses for 1940 and 1941 was about 2 percent on their assessed values and considerably less than that on their market values. This income declined during World War II because of increased taxes and water rents, the imposition of sewer charges, the increased cost of coal, supplies, and wages for operating the central heating plant and in the cost of repairs and mainte-

nance. Increases in rentals aggregated $90,000, effective July 31, 1948; at the same time operating and repair costs continued to rise. This resulted in losses in 1947 of $18,874 and $5,100 in 1948. An application was made to the area rent director for an increase in rentals, but no final action has been taken on this request. As to intervening years, 1945 yielded a net income of $20,076.65; 1946 a net loss of $56,854.94; 1949 a net income of $17,804.45, so that for the five years 1945 to 1949 inclusive a net loss of $50,949.21 was sustained, an average loss of $10,189.84 per year.

The books of the board were audited by Lybrand, Ross Brothers and Montgomery and in accordance with the will of Stephen Girard, all expenditures are charged against income. This accounting practice was approved by this court in dismissing exceptions to the report of Hon. George Wharton Pepper, master, on December 24, 1943, in a proceeding involving the audit of the account of this estate rendered by the Board of Directors of City Trusts.

Mr. Gillam testified that the Federal Housing Administration and the Veterans Administration both appraised the particular premises at $9,000 and that in accordance therewith a contract was entered into by the Board of Directors of City Trusts and the purchasers for the sale of the property at that figure subject to the approval of this court.

Albert M. Greenfield, one of the directors of the Board of City Trusts since 1926, and one of Philadelphia's most prominent and competent real estate authorities, stated that he was familiar with all of these properties; that they are well-built houses but they are old in construction; that the future people will want new houses with "new gadgets" and new improvements which these houses do not possess; that there is great demand for houses all over the city and particularly in this section. However, in recent years

these properties have not met the test for the rate of return that the Board of City Trusts must have to support Girard's charities, more particularly Girard College; that they will not produce the return and that in his opinion it is for the best interests of the estate to dispose of them and to invest the funds in other securities that will bring the necessary return. Mr. Greenfield stated that in his opinion $9,000 is a full and fair price for the premises in question; that it is greater than the sum that could be realized at public sale. He stated that the power plant was dismantled pursuant to the plan to sell the houses, but that under the terms of existing leases, the Girard Estate is obliged to furnish heat; that the expense involved in obtaining heat from public utilities would be very little different than it is by the maintenance of the power plant.

The city controller appeared by counsel and presented no evidence but cross-examined the witnesses for petitioner. Subsequently, briefs were filed in which the controller's counsel urged us to consider what might be the future income from the real estate on a rental basis assuming that by further action before the area rent director additional increases might possibly be obtained and further assuming that the operation of individual heating units might be less expensive than the central heating plant which has now been sold and the operation of which constituted an increasing burden on the estate.

Donald Koster, chairman of the Tenants' Association, which was formed in 1947, appeared in behalf of the tenants. In his testimony he referred to facts adduced at hearings before the area rent director and from these facts he concluded that by making adjustments in line with the adjustments made by the area rent director, the properties could be managed at a profit. He urged that as the result of a further hear-

ing, increased rents might be allowed in the future which would further increase the income. He particularly stressed the fact that the method of accounting, whereby all improvements are charged against income, is not accurate and that if the expenditures were amortized over the life of the improvement, the investment would show a profit.

It is obvious that the result in the long run must be the same, but it is far from clear what method the area rent director used in establishing his base for the adjustments he made. There is no evidence before us to establish this, nor has there been any request for a further hearing. Mr. Koster could not forecast the actual expense of heating by the new method of individual heating units, nor could he approximate with any certainty the degree and extent of increasing deterioration of the buildings by reason of their age. Furthermore, he overlooked the requirement in the will, that all repairs, major and minor, be charged to income.

The amicus curiæ in his report points out the definite trend toward increased cost of operation of real estate and he also emphasizes that the amount of income which can be produced in the immediate future is conjectural. In his report, he suggests that the court has authority to decree sale of real property in this estate, if it is to the best interests of the estate so to do, and he concludes that the present petition should be approved.

In the record made at the hearing, there is no serious dispute that the investment represented by the properties results in an actual loss of income and that the loss has persisted for a sufficient time to demand immediate relief. We cannot speculate on possible future profits in the face of facts which presently exist.

There appears to be complete agreement by all parties that sale at the present time will, in all probability, develop the maximum selling price and, therefore, the largest yield to the estate. It is approximated and not denied that on the basis of present appraisals a net fund of $5,000,000 will be realized which, when invested at the present rate of return on other investments in the trust estate, will yield at least $150,-000 income annually.

The various appellate decisions and the decrees of this court in dealing with the problems which have arisen in the interpretation of the will of Stephen Girard, and in the administration of the trust, are unanimous in finding that the primary object of testator was the founding and perpetuation of the institution which we now know as Girard College.

In considering any problem which may arise with respect to the trust the decision must be made with relation to its effect on the maintenance of full and adequate facilities for the boys who today and in the future shall be the direct beneficiaries of Girard's primary charitable intention. Any circumstance which would tend to reduce the enrollment or deprive the institution of any advantage must be avoided.

The testimony clearly supports the conclusion that the houses comprising this project are presently past their peak in construction and facilities, and therefore, in demand. Serious deterioration will occur in the foreseeable future. If they are to be sold, they must be sold now under the favorable prices and terms presently obtainable. Obviously, therefore, serious loss can be reasonably anticipated both as to principal as well as to income of the trust.

For reasons stated above the price at which the properties are to be sold is fair, reasonable, and just. The tenants who have long enjoyed a favored position by reason of the prudent management of the prop-

erties, central heating and other advantages, are given the first opportunity to purchase and a reasonable time within which to exercise their right to buy.

We, therefore, find the private sale of premises 2532 South Colorado Street will be to the best interests of the estate and that the selling price is reasonable and better than could be had at public sale.

We further find that the purposes and motives animating the Board of Directors of City Trusts in their resolution directing the sale of the properties are meritorious in every particular. We especially conclude that further retention of these properties, including the instant one, will seriously impair the purpose of the trust.

It has not been seriously contended that the court does not have the power to decree the sale despite the express prohibition contained in the will. This question was discussed but not decided by Chief Justice Lowrie in City of Philadelphia v. Heirs of Stephen Girard, supra (p. 27) :

"It is a rule of law and equity, that where a vested estate is distinctly given, and there are annexed to it conditions, limitations, powers, trusts (including trusts for accumulation), or other restraints relative to its use, management, or disposal, that are not allowed by law, it is these restraints, and the estates limited on them, that are void, and not the principal or vested estate."

Subsequent to the above decision the legislature has expressly given to this court under the Price Act and the Revised Price Act power to free title to land which had been shackled by testators whose prescience has been proved by subsequent events to be not merely faulty, but actually destructive of the purpose and intent for the benefit of which the restraints and conditions were imposed.

The original Price Act was adopted in 1853. The act gave the courts of the Commonwealth visitorial powers

over charitable trusts insofar as the sale of real estate, which had been devised for charitable purposes, was concerned. See Burton's Appeal, 57 Pa. 213.

In Mercer Home Fisher's Appeal, 162 Pa. 232, the court having found that the land was incapable of producing income sufficient for the purposes for which it had been devised, decided:

"The question presented is, how shall this partially detached piece of land be best used to promote the interests of the Home? The managers are of the opinion that it is by the conversion of it into money and the investment of the proceeds as part of the permanent endowment fund; but they submit the question to their superior and visitor, the state. The state, through the Orphans' Court, concurs in opinion with the managers and makes a decree authorizing the sale."

In Brock v. Pennsylvania Steel Company, 203 Pa. 249, in construing the Price Act of 1853 in relation to the facts therein set forth the court held:

"The decree does not violate any law conferring immunity or exemption from sale or alienation. The prohibition of sale here does not arise from any statute, from the nature of the property or of the trust upon which it is held, nor from any inherent limitation in the power of the trustees, but rests, so far as it exists at all, on the directions of the testator. But every testator makes his will in subordination to the law of the land. If he should, no matter how positively, attach a prohibition of alienation to an estate in fee, it is set aside without hesitation. So with the Act of 1853. Besides its enforcement of public policy as to the unfettering of land, it is intended to meet changed conditions which work against the testator's principal intent. The courts are given power to preserve that, even to the extent of setting aside the means which he prescribed for securing it."

Under the Revised Price Act of June 7, 1917, as amended, the court may decree the sale of land "provided that such Court shall be of the opinion that such decree will be to the best interests and advantage of all those interested therein and without prejudice to any trust, charity, or purpose for which the real estate or ground rent shall be held and without the violation of any law which may confer an immunity or exemption from sale or alienation."

We, therefore, find that it will be to the best interests of the trust that the building be sold and the prayer of the petition granted.