Shenandoah Borough, Appellant, *v.* Philadelphia.

Argued November 27, 1950. Before Drew, C. J., Stearne, Jones, Bell, Ladner and Chidsey, JJ.

*John J. Gain,* with him *Thomas C. Egan, G. Harold Watkins, James J. Gallagher, M. V. McGuire, Frank Toole, Frank M. Bradigan* and *Leonard G. Schumack,* for appellants.

*Joseph P. Gaffney* and *David Berger,* for appellee.

*Frank A. Gallagher,* for intervenor, appellee.

OPINION BY MR. JUSTICE BELL, March 19, 1951:

These appeals involve the right of the court below to enter judgment n.o.v. Each plaintiff sought to recover damages in an action of trespass against the City of Philadelphia, *Trustee* under the Will of Stephen Girard,

Deceased, sustained as a result of a subsidence affecting a nine block area *over Indian Ridge Colliery in Shenandoah.* The defendant owned certain mining property in Schuylkill County known as Kehley's Run Colliery, which is *adjacent to* the Borough of Shenandoah.

Indian Ridge Colliery had not been actively mined for many years prior to *March 4, 1940* when the subsidence began. Mining was being conducted in Kehley's Run Colliery *since May 3, 1938,* not by defendant, but by the Morea Coal Company under an agreement of lease or sale with defendant, which agreement had been approved by the Orphans' Court of Schuylkill County. Nevertheless plaintiffs sued, not the Morea Coal Company nor the Indian Ridge Colliery, but the Girard Trust Estate. Moreover, the suits were brought on February 28, 1946, almost six years after the subsidence. The two cases were consolidated and tried together. The plaintiff Borough proved damages to street paving and municipally owned water lines and sewer lines, as well as loss of tax revenue; the School District proved the total destruction of one high school building, the cost of repair of another which was seriously damaged, and a loss of tax revenue. The jury returned a verdict for the plaintiff Borough in the sum of $431,-418.57 and for the plaintiff School District in the sum of $430,721.54. The jury also specifically found (1) that the subsidence was caused by the failure of support of Kehley's Run Mine; (2) that the defendant was guilty of negligence in entering into the 1938 lease with the Morea Coal Company; and (3) that after the lease was made in 1938, the defendant was guilty of negligence in permitting the Morea Coal Company to continue with its mining operations in the Kehley's Run Mine.

The court below entered judgment n.o.v. for the defendant alleging more than a half dozen reasons, and

further stated: "Had we not entered judgments notwithstanding the verdicts, we would have granted new trials in both of the cases, on the ground that the finding of the jury was in each instance against the weight of the evidence—not only upon the issue of negligence, but also upon the question of causation".

The importance of this case to the coal regions is evidenced by the fact that 41 political subdivisions joined as intervenors in this suit.

From the voluminous record we shall briefly epitomize the most important facts. The plaintiff School District of Shenandoah based its claim against defendant on the ground that on *May 3, 1938,* defendant leased Kehley's Run Colliery "and the lessee thereof from said date conducted mining operations therein *under the supervision,* direction, *management and control of the Defendant\*,* its engineers, servants, agents and employees". Plaintiff also averred that the lessee *under the defendant's supervision, direction and control* was engaged in second mining operations, that is, was "robbing" or removing pillars of coal in the several veins on said property and in consequence of this robbing, *the surface area overlying said veins* was caused to subside and the lateral support of plaintiff's property was removed thereby; and that the defendant was bound, in the exercise of due care, to foresee that the mining so conducted would cause an extensive subsidence. Similar averments were made by the Borough of Shenandoah in its statement of claim. *There was no evidence to prove the facts on which each plaintiff based its claim or the negligence thus charged against this defendant;* and, as we shall see, each plaintiff subsequently amended its statement of claim by adding additional acts of negligence long after the Statute of Limitations had expired.

---

\* Italics throughout ours.

Stephen Girard at the time of his death on December 26, 1831, was the owner of many tracts of land, including Kehley's Run Colliery, in Schuylkill County, Pennsylvania. He gave his residuary estate, as is well known, to the City of Philadelphia, in trust for several charitable uses and trusts, the major one of which was the establishment of a college for poor white male orphans. Years after Mr. Girard's death, coal was discovered in some of the land in Schuylkill County, including Kehley's Run. Mr. Girard's will gave his trustees no authority to mine coal or to operate a coal mine, but did give authority to lease real estate; and the courts subsequently, from time to time, authorized the trustee to sell real estate. See *City of Philadelphia v. Heirs of Stephen Girard,* 45 Pa. 9; and *Girard Estate,* 73 Pa. D. & C. 42.

On *May 3, 1938,* the City of Philadelphia, *Trustee Under the Will of Stephen Girard,* denominated "lessor", entered into a written agreement with the Morea Coal Company, denominated "lessee", granting the *"exclusive license to mine, dig and carry away coal in and from all the beds or seams of coal upon . . . Kehley's Run Colliery . . .* for a term of ten years". The surface subsidence above mentioned, which commenced on *March 4, 1940,* was entirely above the Indian Ridge Mine and apparently (plaintiffs' testimony on this point was very vague) there was no surface subsidence over the Kehley's Run Mine. Plaintiffs sued the Girard Trust Estate in its capacity *as a public charity* and did not sue the trustee in its individual capacity, apparently under the authority of *Winnemore v. Philadelphia,* 18 Pa. Superior Ct. 625, which was quoted with approval in *Südekum, Admr. v. Animal Rescue League,* 353 Pa. 408, 45 A. 2d 59. In the last mentioned case, Mr. Justice STERN said at page 417: "Of course, if, as in Winnemore v. Philadelphia, 18 Pa. Superior Ct. 625, a charitable institution *conducts* a business enterprise

*not directly related* to the purpose for which the charity
was organized, any negligence on the part of its serv-
ants or agents in the operation of that enterprise *im-
poses liability upon the charity."* Certainly the defend-
ant was engaged, if engaged at all, in conducting a
business enterprise which was not directly related to
the purpose for which the charity was organized. Wheth-
er the court below was correct in applying the familiar
general rule that a fiduciary or charity is not liable for
the negligence of its employees or agents,* it is unneces-
sary, for reasons which will hereinafter appear, to
determine.

Another important contention of appellants is that
the written agreement of May 3, 1938 was a lease and
not a sale of coal in place.  The parties are denominated
lessor and lessee; the lessor grants the lessee exclusive
license to mine, take and carry away coal, for the term
of ten years; the lessee promises to pay royalty on all
coal mined; the lessee shall furnish the lessor state-
ments of sales; the lessor shall have the right to examine
all contracts and books of lessee; whenever the work-
able coal is actually exhausted the lease shall terminate,
and lessor shall be entitled to resume possession of the
premises; all taxes assessed upon the premises as land,
including coal or surface or both, shall be paid by the
lessor; the lessee shall open slopes, shafts or tunnels
for mining coal in a workmanlike manner and as pre-
scribed by the Mining Laws and Regulations of the
State of Pennsylvania; the location and size of the
slopes, shafts, tunnels, etc., and of the engines, pumps,
breakers and other improvements shall be subject to the
approval of the lessor; the lessee shall use the most
approved methods of modern mining and shall comply

---

* See *Fire Insurance Patrol v. Boyd,* 120 Pa. 624, 15 A. 553;
*Gable v. Sisters of St. Francis,* 227 Pa. 254, 75 A. 1087; *Siidekum
v. Animal Rescue League,* 353 Pa. 408, 45 A. 2d 59.

in every respect with laws now existing or hereafter enacted by the State of Pennsylvania or of the United States. The question of whether a coal bed or seam was workable was left to arbitration. The lessee shall leave no coal unmined for the purposes of affording vertical or lateral support to any easement or structure upon or adjacent to the demised premises when such easement or structure shall not have a proven legal right to such support. There was a prohibition against transfer or assignment of the estate granted. The right was reserved to lessor to have its mining engineer and other representatives examine the mines, machinery and improvements of every kind on the premises. There then followed legal remedies giving the lessor the right to distrain for rents or royalties, etc., and a right of forfeiture and re-entry.

To a great many people who do not live in coal counties, the aforesaid instrument having the usual terms and attributes of a lease, would seem to be a lease. Nevertheless the law is long and well settled in Pennsylvania that " 'The grant of a right to mine coal in the lands of the lessor and remove it therefrom, although the instrument may be called a lease, is a grant of an interest in the land itself, and not a mere license to take the coal.' The transaction . . . constituted a sale of the coal conditioned upon its being removed within the period specified": *Lazarus's Estate*, 145 Pa. 1, 8, 23 A. 372.

"It is none the less a sale, if the parties called the deed a lease, and styled themselves lessor and lessee, and contracted that in case of non-payment of the 'royalty' the grantor should have the right of distress, or at his option the right to forfeit the grant": *Delaware, Lackawanna and Western Railroad Company v. Sanderson*, 109 Pa. 583, 589, 1 A. 394; ". . . and the fact that the right to take is limited to a term of years, does not make it any the less a sale": *Advance Indus-*

*trial Supply Co. v. Eagle Metallic Copper Co.,* 267 Pa. 15, 20, 109 A. 771. See to the same effect *Timlin v. Brown,* 158 Pa. 606, 28 A. 236, and *Sturdevant v. Thomson,* 280 Pa. 233, 124 A. 434, where in each case the instrument purported to *lease the land for ten years* for the purpose of mining coal, yet the Court held it was a sale of the coal in place. And as stated by the late Chief Justice MAXEY in *Smith v. Glen Alden Coal Co.,* 347 Pa. 290, 298, 32 A. 2d 227: "It is settled in this State that a lease of coal in place, such as this is, 'until such time as all the available merchantable coal shall have been mined and removed', *is a sale of an estate in fee simple* and leaves the lessor with only an interest in the royalties to be paid him under that lease".

Whether the written instrument of May 3, 1938 is a sale or a lease, is in our opinion immaterial since neither the vendor nor lessor of a coal mine is responsible in trespass for the negligent mining by his (so-called) lessee which results in damage to the surface: *Offerman v. Starr,* 2 Pa. 394; *Greek Catholic Congregation v. Plummer,* 338 Pa. 373, 12 A. 2d 435; *Hill v. Pardee,* 143 Pa. 98, 22 A. 815. In *Offerman v. Starr,* supra, the owner of a mine demised the right to mine on a royalty basis, reserving the right to view and examine the mine and to re-enter on non-payment, etc. *The Court held that the owner was not liable for an injury resulting from the mining by the tenant.* Mr. Chief Justice GIBSON said, inter alia, at page 396: "What had these defendants to do with the direction of the business or the coal when it was mined? Lewis covenanted to sink the slope, erect the engine, to take out a certain number of tons each year, according to the most approved method of mining, and carry it to the landing; and to pay a certain sum per ton for it. So far the defendants had nothing to do with the business, but to receive their rent. But they reserved a right to visit and examine the manner in which the business should

be carried on in the mine; and to resume the possession should the tenant refuse to furnish statements of the amount taken out, or pay the rent. These clauses do not constitute a reservation of the possession or a right to interfere with the direction of the business. The right of visit was to enable them to see whether the tenant was performing his engagements, in order to found process against him if he were breaking them; and the right to resume the possession was to put an end to the business altogether . . . . *On no principle, then, could the acts of Lewis be imputed to his lessors."*

In *Greek Catholic Congregation v. Plummer,* 338 Pa. 373, 12 A. 2d 435, plaintiff brought an action in trespass for damages for mining and removal of coal from plaintiff's land by defendants through their agent, the Wilson Coal Company, to which defendants had made a lease dated May 1, 1931. The lease was in form similar to the lease in the present case, but the Court held it was in legal effect a quit-claim deed. The language of the opinion by Mr. Justice MAXEY is particularly pertinent: *"It is settled law in this Commonwealth that the lessor of a coal mine is not responsible in trespass of the negligent mining by his lessee which results in damage to the surface.* In Hill v. Pardee, 143 Pa. 98, 22 A. 815, this Court held that in such a case the disturbance of a right of surface support is a tort for which the party which did the mining and not the lessor was responsible. In Offerman v. Starr, 2 Pa. 394, this court said in an opinion by Chief Justice GIBSON: *'Respondeat superior is inapplicable to an owner of land, for acts of negligence in a business not conducted by him and for his account.'* . . . Appellant also contends that because the defendants sent a mining engineer into the mine from time to time to inspect and report to the lessor on the mining operations, they 'aided and abetted and participated in the mining and digging out of the said coal as fully and effectually as they individually

could have done had they been present in person.' *In making this contention the appellant is asking this court to attribute to a well recognized custom in respect to mining 'leased' coal a legal significance the custom does not have.* Lessors of coal, whose remuneration depends on the tonnage mined, are properly vigilant in seeing to it that none of the coal is wasted by reckless, unskilful mining and to this end they customarily reserve the right to inspect the workings either by themselves or by a competent mining engineer. *That such a provision does not make the lessor a 'director'* of the mining operation was expressly held by this court in Offerman v. Starr, 2 Pa. 394 (supra)."

The court below correctly held that there was no evidence to prove the averments in plaintiffs' statements of claim, that the lessee conducted mining operations or robbed pillars *under the supervision, direction, management and control of the defendant.* Faced with this situation each of the plaintiffs, toward the end of the trial of their case, amended each of their statements of claim by adding additional acts of negligence. Briefly stated these amendments charged that defendant failed in the exercise of due care in entering into the "lease" of May 3, 1938, *when it knew or should have known* that the mine was practically exhausted and *the removal of further coal would cause the withdrawal of lateral support and subsidence of plaintiffs' property,* and, in permitting or failing to stop the mining of coal by the lessee when defendant knew or should have known damage would be occasioned thereby.

Plaintiffs offered expert testimony to support and prove the allegations of their amendments. The right of surface support and of lateral support and the kind and quantum of negligence required to be proved is set forth in *Home Brewing Co. v. Thomas Colliery Co.,* 274 Pa. 56, 117 A. 542; *Matulys v. Coal & Iron Co.,* 201 Pa. 70, 50 A. 823; *McGettigan v. Potts,* 149 Pa. 155, 24

A. 198; *Noonan v. Pardee,* 200 Pa. 474, 50 A. 255. The learned court below held that plaintiffs' evidence to support their amendments was inadequate. It is unnecessary to decide this question because the amendments, which were vigorously objected to by defendant, were barred (as the court below correctly held in its opinion granting an n.o.v.) by the Statute of Limitations and should not have been allowed: *Martin v. Pittsburg Rys. Co.,* 227 Pa. 18, 75 A. 837; *Mays v. Gas Co.,* 268 Pa. 325, 112 A. 22; *Cox v. Wilkes-Barre Rwy. Corp.,* 334 Pa. 568, 6 A. 2d 538; *Noonan v. Pardee,* 200 Pa. 474, 50 A. 255.

In *Grier v. Northern Assurance Co.,* 183 Pa. 334, 39 A. 10, the Court in its opinion, said (p. 343) : "The doctrine that *a new cause of action* cannot be introduced, or new parties brought in, or a new subject-matter presented, *or a fatal and material defect in the pleadings be corrected,* after the statute of limitations has become a bar, is so familiar to the profession, and has been declared by this Court and by the courts of last resort of many other states of the Union, so frequently, that an extended review of the authorities is quite unnecessary."

In *Martin v. Pittsburg Rys. Co.,* 227 Pa. 18, 75 A. 837, where an action in trespass was brought for the death of a person, an amended statement was not allowed after the statute of limitations had run. What the courts mean by *a new cause of action* is apparent from the opinion written by Mr. Justice ELKIN in which he said, inter alia (pp. 20, 21) : "At the trial every act of negligence charged in the original statement was shown to be untrue and without foundation in fact. There was no evidence to show that proper signals were not given, and the positive testimony of witnesses produced by appellant showed that the car had a headlight; that it was not running at an excessive rate of

speed, and that the decedent was not attempting to cross the street at the time of the accident. . . . Can this situation be cured by an amended statement *setting up an entirely different theory, charging a different kind of negligence* based upon different relations of the parties after the statute of limitations had become a bar? All of our cases hold that this cannot be done if a new cause of action be introduced by the amended statement. The *cause of action, if any, was the negligent act or acts which occasioned the injury.* In the original statement the negligent acts relied on to sustain a recovery were recited in detail and with such circumstantiality as to leave no doubt upon what ground a recovery was based. In the amended statement this ground is not merely shifted, it is entirely abandoned. It is not, therefore, a case of adding to or amplifying the original statement within the rule recognized in some of our cases, but on the contrary a different theory is relied on, new grounds are set up and other acts of negligence entirely different are alleged. The relations and duties of the parties are entirely changed by the amended statement. In the original statement the standard of care was the duty owed by a street railway company to a person, not an intending passenger, at a street crossing. In the amended statement the relation of common carrier and passenger is set up, and the standard of care required in protecting an intending passenger while getting on the car is relied on. The two theories are entirely inconsistent and cannot be sustained on the ground that one is but an enlargement of the other."

In *Cox v. Wilkes-Barre Rwy. Corp.*, 334 Pa. 568, 6 A. 2d 538, plaintiff's statement of claim charged that defendant was negligent in operating a car at reckless speed and in failure to have the car under control. Four years after the accident the statement was sought

to be amended to read "neglecting to maintain its right of way in reasonably safe condition". The amendment was rejected, the late Chief Justice MAXEY saying, page 569: "It is clear that the proposed amendment introduced a new cause of action, to wit, defendant's failure to maintain its right of way in a reasonably safe condition. There is no difficulty in defining the phrase 'cause of action.' It obviously means what this court in Martin v. Pittsburg Rys. Co., 227 Pa. 18, 75 A. 837, said it meant, to wit: 'The negligent act or acts *which occasioned the injury,'* . . . It is elementary that after the Statute of Limitations has run a plaintiff cannot amend his statement by introducing a new cause of action: Mays v. United Natural Gas Co., 268 Pa. 325, 112 A. 22."

In *Noonan v. Pardee,* 200 Pa. 474, 50 A. 255, plaintiff brought an action of trespass for damages to the surface of his land caused by defendant's removal of coal underlying plaintiff's land. The Court held that after six years an amendment alleging that plaintiff's damages were caused by defendant's removal of lateral support in an adjacent mine introduced a new cause of action which was barred by the Statute of Limitations.

These cases control in principle the instant case. It is therefore clear that the court below was correct in holding that plaintiffs' amendments introduced a new cause of action and having been offered at least nine years after the plaintiffs' cause of action arose, were of course barred by the Statute of Limitations.

Plaintiffs having failed to prove the averments in their original statement of claim, namely, that the lessee (vendee) conducted mining operations and was robbing pillars of coal under the supervision, direction, management and control of the defendant, their cases against this defendant must fail.

A number of other important legal questions were

raised and vigorously argued by both appellants and appellee. We have considered them all, but deem it unnecessary to discuss them herein.

Judgment affirmed.