## Brockway v. F. H. Buhl Club

*Philip E. Brockway*, for plaintiffs.

*Cyril T. Garvey*, for defendants.

McKAY, J., June 15, 1956.—This case is before the court en banc on a motion for judgment on the pleadings. The complaint claims damages for injuries sustained by Corinne E. Brockway, the wife-plaintiff, on February 17, 1955, when she fell upon the steps which lead to the F. H. Buhl Club building in the City of

Sharon. It avers that the trustees of the F. H. Buhl Club, naming the nine trustees, jointly with the City of Sharon, operate a free public library in the building and share the expense of maintaining the library and the steps leading to it. The action is founded upon the alleged negligence of defendants in permitting the steps to become and remain in an icy condition.

The trustees filed an answer in which they deny that they have anything to do with operating the library or that they maintain the steps leading to it. Under new matter they averred that they constitute a charitable organization and for that reason are immune from liability for the torts of their employes.

Plaintiffs filed a reply to the new matter, in which they averred that the trustees were not acting in their capacity as a charitable organization at the time of the accident, but were acting outside of their duties as trustees of a charitable organization.

The trustees thereupon filed the present motion for judgment on the pleadings and alleged that the pleadings failed to establish a cause of action against the trustees.

At the oral argument it was conceded that the trustees are a charitable organization and as such are immune from liability for the negligence of their servants, but counsel contended that by operating the library in conjunction with the city and with funds furnished by the city, they were acting outside the charitable purposes for which they were constituted and, therefore, lost their immunity from liability.

The question involved, as set forth in plaintiffs' brief is: "Is a charitable association liable for the negligence of its employes in the maintenance of a free public library, when the library is principally supported by the municipality in which it is located?"

As we understand the position of plaintiffs, it is that the acceptance by the trustees of public funds from

the city for the maintenance of the library causes the trustees to cease to be a charitable organization for the purpose of liability for the torts of their servants.

Counsel for plaintiffs cites the case of Siidekum v. Animal Rescue League of Pittsburgh, 353 Pa. 408 (1946), as authority for their position and quotes Mr. Justice Stern at page 417 as follows:

"Of course, if, as in Winnemore v. Philadelphia, 18 Pa. Superior Ct. 625, a charitable institution conducts a business enterprise not directly related to the purpose for which the charity was organized, any negligence on the part of its servants or agents in the operation of that enterprise imposes liability upon the charity."

He also cites Shenandoah Borough v. Philadelphia, 367 Pa. 180, and Radobersky v. Imperial Volunteer Fire Department, 368 Pa. 235.

In all of these cases, however, the charitable institution was conducting either a business enterprise, as in the Winnemore and Shenandoah case, or participating in a noncharitable activity as in the Radobersky case. In the last mentioned case the Volunteer Fire Department participated in a parade for the promotion of a carnival which the court held not to be distinguished in principle from the productive use of a commercial building owned by it. In the present case none of these elements are present.

The conduct of a free public library is clearly a public charity. In 14 Corpus Juris Secundum, page 446, §15, it is stated:

"A gift for the purpose of establishing or supporting a public library is a charitable gift, even where a town is authorized to appropriate money therefor."

We, therefore, do not have a situation where a charitable association is engaging in a commercial or other noncharitable function. The most that could be said is

that the trustees were engaging in a different charity from the one for which they were created, if that is the case.

The fact that the trustees received funds from the City of Sharon for the operation of the library would not deprive them of the immunity from liability which a public charity enjoys. This point is expressly decided in the Siidekum case, supra. In that case, defendant, a charitable organization incorporated to care for animals, entered into a contract with the City of Pittsburgh whereby, for $1,000 a month, the league undertook to collect and impound stray dogs within the city.

A truck owned by the league was being driven by a city policeman for the purpose of picking up a stray dog when it collided with an automobile, killing a passenger. It was held that the league was not liable for the negligence of the driver, although the jury found the latter was the servant of the league as well as of the city, for the reason that a charitable organization is immune from liability for the torts of its servants. The services rendered by the league were the same as those for which it was chartered. The court held that the compensation it received from the city was in no different category than the contributions and donations it obtained either from persons directly benefited by its activities or from strangers.

It does not appear from the record whether the trust for which the trustees acted was broad enough to include the operation of a free public library. Therefore, for the purpose of the motion before us, it must be assumed that it was not.

So assuming, it may be contended that the mere fact that the trustees were operating a public charity (the library) other than the charity or charities for which their trust was created, would, of itself, deprive the trustees of their immunity from liability.

In our opinion this result would not follow. When the courts are faced with a new application of the principle of immunity of public charities, they address themselves to the question, "What is the real basis upon which the immunity principle results?"

This test was the one applied in the case of Bond v. Pittsburgh, 368 Pa. 404 (1951), at page 409. Answering the above question, Chief Justice Stern, in the opinion, said:

"It is, as expressed in Fire Insurance Patrol v. Boyd, supra, (p. 647, A. p. 557) that the funds specially contributed for a public charitable purpose should not be misapplied to objects not contemplated by the donors, for a public charity is but a trustee and is bound to apply its funds in furtherance of the charity and not otherwise. It was also stated in Gable v. Sisters of St. Francis, supra, (p. 258, A. p. 1088) that the doctrine rests fundamentally on the fact that liability, if allowed, would lead inevitably to a diversion of the trust funds from the purposes of the trust. That being so, it is evident that the evil which the doctrine aims to avoid would result in exactly the same manner if the trust assets of the charity were taken under a judgment obtained by the municipality as under a judgment obtained directly by the victim of the accident. Since, therefore, the reason for the enforcement of the rule exists equally in the one situation as in the other, the rule itself ought not be changed merely because of a difference in the process whereby recovery out of the assets of the charity is sought to be effected. To hold otherwise would be to ignore both the social philosophy and the practical considerations upon which the principle of immunity is founded. Resting as it does upon a public policy which aims to keep the funds of the institution intact in order to accomplish the larger ends for which they were contributed, that policy would be none the less defeated if its funds were to be

siphoned off by an action of assumpsit brought by the municipality under a claim of indemnity instead of by a tort action brought by the injured person. To recognize such a distinction as controlling, therefore, would be to magnify form at the expense of substance, legalism at the expense of realism."

The Bond case was a case in which a municipality sought to hold a public charity jointly liable with it for a sidewalk injury. The same reasoning, however, would apply to the present case if it were sought to deny the principle of immunity to public charities where they carry on a charitable enterprise other than the one for which they were created. If the funds expressly contributed for a special charitable purpose are to be regarded as trust funds to be applied in furtherance of the charity, it would follow that they cannot be subject to execution on a judgment obtained against the trustees so long as the latter do not engage in a commercial enterprise.

For these reasons we are of the opinion that the doctrine of immunity of a public charity from liability should apply to the enterprise carried on by the trustees in the case at bar and that judgment must be entered upon the pleadings for defendant-trustees.

### Order

And now, June 15, 1956, it is ordered that judgment upon the pleading be entered in favor of the trustees of the F. H. Buhl Club, viz., Glenn Carley, president; Ellen Marshall, secretary; H. P. Forker, Jr., Eleanor Whitla, T. H. Armstrong, Louis J. Wiesen, Isabel G. Forker, H. B. McDowell, Jr., and Henry P. Forker, 3rd, defendants.

### Exception

And now, June 15, 1956, to the foregoing order of the court, counsel for plaintiff excepts and, eo die, a bill of exceptions is sealed for plaintiff.