J-A13021-16

2016 PA Super 228

| | |
|---|---|
| BIRDIE ASSOCIATES, L.P., A PENNSYLVANIA LIMITED PARTNERSHIP | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| CNX GAS COMPANY, LLC, A CORPORTION, A/K/A CONSOLIDATION COAL CO., A CORPORATION AND/OR CONSOL PENNSYLVANIA COAL CO., A CORPORATION | |
| Appellees | No. 1020 WDA 2015 |

Appeal from the Order Entered June 4, 2015
In the Court of Common Pleas of Washington County
Civil Division at No: 2010-8183

BEFORE:  OLSON, STABILE, and MUSMANNO, JJ.

OPINION BY STABILE, J.:                    **FILED OCTOBER 20, 2016**

At issue in this appeal from the June 4, 2015 order entered in the Washington County Court of Common Pleas is "the recurring question of whether an instrument captioned 'Lease' that transfers some interest in a tract of coal is or is not in fact a sale of the coal."  Trial Court Opinion ("T.C.O."), 6/4/15, at 1.  The trial court determined that the leases in question constituted a sale and granted summary judgment in favor of Appellees, CNX Gas Company, LLC a/k/a Consolidation Coal Co. and/or Consol Pennsylvania Coal Co., and dismissed the complaint filed by Appellant, Birdie Associates, L.P.  The trial court also denied Appellant's

motion for summary judgment. Following review, we affirm the June 4,
2015 order.

The underlying facts are not in dispute. As the trial court explained in
its opinion in support of its grant of summary judgment:

> In 1985, Ethel Spragg executed a document presented to her by
> Consol Land Development Company by which she agreed to
> "lease and let to lessees, its successors and assigns all of [her]
> undivided one-half interest in and to all of the Pittsburgh seams
> or measures of coal and all constituent products of such coal in
> and underlying" certain lands in Gilmore, Jackson, Springhill and
> Freeport Townships in Greene County, containing a total of
> 289.81 acres. On the same day Joan Spragg Wermlinger and
> David L. Wermlinger, wife and husband, executed a substantially
> identical lease to the same lessee for the other one-half of those
> parcels of coal. All parties were represented by counsel. The
> instruments included the usual mining rights.
>
> The term of the lease was to be for 20 years, plus an option to
> renew prior to the termination of the original term, if prior to the
> termination of the original term the lessee tendered to the lessor
> a renewal charge of $100.00 per acre. The consideration for the
> transfer of coal and mining rights was to be three percent of the
> sale price of the coal, or 50 cents per ton, whichever was
> greater. During the original term and the extension thereof,
> lessee would pay to lessor the sum of $50.00 per acre per year
> as Advance Minimum Royalty, to be credited against tonnage
> royalties if and when produced. All such Advance Minimum
> Royalties have regularly been paid. The leases would have
> expired in 2005, but the lessee's assignees tendered the renewal
> payment and, therefore, the leases run to 2025. Lessee and its
> assignees have always paid the Advance Minimum Royalty, but
> no coal has been mined from these tracts. [Appellant] alleges,
> and [Appellees] do not deny, that there are no current plans to
> mine the coal.
>
> [Appellant] . . . is the assignee of the original lessors, and
> [Appellees are] the assignee of the original lessees. In 2010
> [Appellant] filed a complaint containing counts alleging
> conversion, unjust enrichment and trespass, plus a demand for
> punitive damages. This complaint described how [Appellees

were] exploiting and marketing through a system of wells and pipeline the coal bed methane [CBM] produced from the subject coal, but was paying lessor nothing for it. CBM, as its name implies, is methane found in coal. It is doubtless a "constituent product" of coal. Title to CBM is vested in the owner of the coal. ***U.S. Steel v. Hoge***, 468 A.2d 1380 (Pa. 1983). The 1985 leases are silent as to CBM or to wells and royalties resulting from the sale of CBM.

T.C.O., 6/4/15, at 1-2.

Following the close of discovery, both parties filed motions for summary judgment. Essentially, Appellant argued that Appellees were producing gas from coal that was the subject of the leases and that the leases violated the Guaranteed Minimum Royalty Act ("GMRA"), 58 P.S. § 33.3, because the leases did not guarantee the lessor a minimum royalty of one-eighth of all gas removed from the property.[1]

Appellees countered that the GMRA did not apply because the leases, regardless of their designation as "leases," were actually grants in fee and that Appellees, as owner of the coal and its constituent parts, could sell the

_____

[1] The GMRA provides:

A lease or other such agreement conveying the right to remove or recover oil, natural gas or gas of any other designation from the lessor to the lessee shall not be valid if the lease does not guarantee the lessor at least one-eighth royalty of all oil, natural gas or gas of other designations removed or recovered from the subject real property.

58 P.S. § 33.3. Royalty guaranteed (formerly cited as 58 P.S. § 33).

CBM without any obligation to pay Appellant any amount other than that stated in the leases, *i.e.*, Advance Minimum Royalty payments and/or 3% of the market value of the coal when sold.[2]

By order entered on June 4, 2015, the trial court granted Appellees' motion for summary judgment and dismissed Appellant's complaint. In the same order, the trial court denied Appellant's motion for summary judgment. Appellant filed this timely appeal. The trial court directed Appellant to file a statement of matters complained of on appeal and Appellant complied. In response, the trial court issued an order indicating that Appellant's issues were adequately addressed in its June 4 opinion and order. Appellant now presents the following five issues for this Court's consideration:

1. Did the [t]rial [c]ourt err when it interpreted the 1985 coal [l]eases and failed to acknowledge at the time the [l]ease agreement was executed that the coal bed methane gas ("CBM") as a "constituent product" of the coal was owned by Appellant when the [c]ourt came to the conclusion that the coal lease was a sale of the coal and the CBM and, thus, Appellees could produce the CBM contained in the coal without paying for the right to do so[?].

2. Did the [t]rial [c]ourt err when it interpreted the [c]oal [l]eases and ignored the plain wording and meaning of the Pennsylvania Oil and Gas Act . . ., Section 1.3 <u>Royalty guaranteed</u>, which clearly states that a [l]ease or other such agreement conveying the right to remove or recover oil,

_____

[2] As noted by the trial court, Appellant did not contend Appellees failed to make the required Advance Minimum Royalty payments due under the leases of $50 per acre per year. T.C.O., 6/4/15, at 2.

natural gas or gas of any other designation from the lessor to the lessee shall not be valid if the [l]ease does not guarantee the lessor at least one-eighth royalty of all oil, natural gas or gas of other designations (CBM gas) removed or recovered from the subject real property, and the 1985 leases or other such agreement at issue did not guarantee Appellant a royalty for the right to remove CBM gas from the subject real property[?]

3. Did the [t]rial [c]ourt err when it granted [s]ummary [j]udgment and dismissed the [c]omplaint when presented with the undisputed fact that in 29 years of the 40-year term [l]ease(s) (1985-2025) Appellees . . . had not mined one lump of coal and admitted that it had no intention of ever mining any coal (Appellee assigned its right to mine the coal to Murray Energy Corporation) during the 40-year term of the [l]ease(s) and has only used the [l]ease(s) to remove and recover the CBM gas without paying any royalty to Appellant as required by law[?]

4. Did the [t]rial [c]ourt err as a matter of law in its interpretation of the plain meaning and intent of the parties to the 1985 [l]ease(s) and the plain meaning of [t]he Pennsylvania Oil and Gas Act . . . when it ruled that the coal [l]ease(s) acted as a sale and conveyance of both the coal and the CBM gas, and, therefore, no consideration by way of royalty is due on the CBM gas removed and recovered under the [l]ease(s) entered into[?]

5. Did the [t]rial [c]ourt err when it refused to acknowledge the facts of record, i.e., the legal opinion of Wesley A. Cramer, Esq., along with the Covert/Wallace coal [l]ease, which is identical to Appellant's coal [l]ease and the fact that Appellees entered into a CBM gas [l]ease with Covert/Wallace, that clearly demonstrate that Appellees know that they were required by law to pay a royalty to coal owners it had entered into [l]eases with when, in 2006, Appellees decided to remove and recover any CBM gas from the coal properties it had under [l]ease[?]

Appellant's Brief at 6-8 (footnote omitted).

As this Court has recognized:

When reviewing a trial court's grant of summary judgment, our standard and scope of review are as follows:

> Our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo.*

> *Reinoso v. Heritage Warminster SPE, LLC,* 108 A.3d 80, 84 (Pa. Super. 2015) (*en banc*) (additional citations omitted). With respect to the denial of summary judgment, "[w]e review the trial court's denial of summary judgment for an abuse of discretion or error of law." *Ramsay v. Pierre*, 822 A.2d 85, 90 (Pa. Super. 2003).

*Bezjak v. Diamond*, 135 A.3d 623, 627 (Pa. Super. 2016).

In its first issue, Appellant asserts trial court error for its interpretation of the 1985 leases, for determining that the lease was a sale of coal and CBM because the CBM, as a "constituent product," was owned by Appellant. A review of coal lease cases is instructive.

Coal leases have been the subject of litigation in this Commonwealth for well over a hundred years. In *Smith v. Glen Alden Coal Co.*, 32 A.2d 227 (Pa. 1943), our Supreme Court recognized the established rule in Pennsylvania "that the lease of coal in place with the right to mine and remove all of it for a stipulated royalty vests in the lessee a fee." *Id.* at

233. Therefore, "if the fee to the severed coal is vested in the lessee no interest in the coal as real property remains in the lessor and [] his only interest therein is personal property. The lessor's interest in the lease is properly termed a possibility of reverter." *Id.*

In ***Shenandoah Borough v. Philadelphia***, 79 A.2d 433 (Pa. 1951), *cert. denied*, 342 U.S. 821 (1951), our Supreme Court explained:

> To a great many people who do not live in coal counties, the aforesaid instrument having the usual terms and attributes of a lease, would seem to be a lease. Nevertheless the law is long and well settled in Pennsylvania that "[t]he grant of a right to mine coal in the lands of the lessor, and remove it therefrom, although the instrument may be called a 'lease,' is a grant of an interest in the land itself, and not a mere license to take the coal. The transaction . . . constituted a sale of the coal, conditioned upon its being removed within the period specified[.]" ***Lazarus's Estate***, 145 Pa. 1, 8, 23 A. 372, 373 [(1892)].

*Id.* at 436. More recently, the Court noted:

> The term "lease" is in some respects a misnomer. What is really involved is a transfer of an interest in real estate, the mineral in place. ***Hummel v. McFadden***, 395 Pa. 543, 552, 150 A.2d 856, 860 (1959); ***Shenandoah Borough v. Philadelphia***, 367 Pa. 180, 186–87, 79 A.2d 433, 436, *cert. denied,* 342 U.S. 821, 72 S.Ct. 39, 96 L.Ed. 621 (1951). Common Pleas' construction gives the transfer involved the characteristics of a fee simple determinable in the coal, which the lease severs from appellees' interest in the surface.

***Hutchinson v. Sunbeam Coal Corp.***, 519 A.2d 385, 387 n.1 (Pa. 1986).

Even more recently, this Court reviewed a coal lease in a case that also involved extraction of CBM. In ***Kennedy v. Consol Energy***, 116 A.3d 626 (Pa. Super. 2015), this Court examined ***U.S. Steel v. Hoge***, 468 A.2d

1380 (Pa. 1983). Although **Hoge** involved an oil and gas lease as well as a coal lease, we find this Court's conclusion regarding ownership of CBM applicable to the case before us. This Court stated:

> We read **Hoge** as establishing the general rule that, when a coal severance deed is silent as to ownership of the coalbed methane, or does not expressly reserve coalbed methane from the coal conveyance or specifically define coalbed methane as a gas, the coalbed methane gas contained in the coal belongs to the owner of the coal.

**Kennedy**, 116 A.3d at 633.

Appellant argues that this Court rejected as outdated the "Pennsylvania Doctrine," *i.e.*, that a coal lease automatically constitutes a sale in fee, in **Olbum v. Old Home Manor, Inc.**, 459 A.2d 757 (Pa. Super. 1983). We find **Olbum** factually distinguishable and inapposite. In that case, landowners sued to recover payments for strip-mining their property under a four-year lease that called for set monthly payments over the term of the lease. When the mining company determined further mining was not economically justified after fourteen months, they ceased making payments called for in the lease. In that case, it was the landowners who sought a ruling that the lease was a sale so they could collect royalties for the remainder of the lease term. Finding that the lease did not constitute a sale, this Court explained:

> We reject the use of the "Pennsylvania Doctrine" as unjustified. The assumption that a lease of land for coal mining operations amounts to an automatic "sale in place" of the coal is long out-dated:

Not *every* agreement for the mining of coal, however, amounts to a sale of the coal in place. "A contract regarding coal in place may be a sale absolute, a conditional sale, a lease in the ordinary expression of that term, or a mere license to make and remove the minerals." ***Hummel v. McFadden***, 395 Pa. 543, 150 A.2d 856, [8]61 (1959) and cases cited therein.

The ***Hummel*** court stressed that the "unrestricted dominion" contractually given to the miners in that case was the factual basis for a holding that the contract represented a sale of the coal in place.

The most cursory reading of the contract in the instant matter shows that the appellant-landowners executed a document carefully tailored to protect their land, their interests in the land and in the coal payments. In particular, we note that the agreement in question, unlike the agreement in ***Hummel*** was limited to a term of four (4) years. In short, without lengthy discussion of the matter, we conclude that the instant case should be decided on the general law of contracts, and we approach the matter from that posture.

***Id.*** at 760 (emphasis in original).

Despite Appellant's suggestion to the contrary, ***Olbum*** did not abolish the so-called Pennsylvania Doctrine. Rather, the case stands for the proposition that while a coal lease does not automatically convey a sale of the coal in place, the conveyance **may** be a sale, depending on the language of the contract. Here, the leases conveyed all interest in coal and its constituent products for a period of twenty years, now forty years by extension. Leases, 4/15/85, at 1.[3] The leases conveyed the right to the coal and its constituent products "together with the right to mine and

_____

[3] The inclusion of a term of years does not defeat the characterization of a lease as a sale. ***See, e.g., Shenandoah Borough, supra***, 79 A.2d at 436.

remove all of said coal and the free and uninterrupted right and right-of-way into, through and under the said land . . . ." *Id.* at 2. After outlining other rights, the lease provides, "It is understood and agreed that the rights hereinbefore mentioned are in enlargement and not in restriction of the rights incidental to the mineral estate and ownership of said coal." *Id.* Further, Appellant "warrant[ed] generally the title to the Leased Premises and Lessee's quiet enjoyment of the same and agree[d] that Lessee, at its option, may discharge any tax, mortgage, other lien, or encumbrance suffered or permitted upon or against the Leased Premises." *Id.*

In addition to the interests and rights conveyed, the leases provide for payment to Appellant of an annual per-acre advance minimum royalty, regardless of whether any coal was mined. Appellees agreed to payment of tonnage royalties for all coal mined, receiving a credit for advance minimum royalties based on coal mined. Appellees also assumed the obligation to pay all taxes assessed against the premises and to indemnify and save harmless Appellant from all claims arising out of Appellees' negligence.

Based on the language of the lease, the trial court appropriately determined that the lease constituted a sale of coal and its constituent products and rejected Appellant's claim of ownership of the CBM. As the trial court explained, the leases in question clearly conveyed the "interest in and to all of the Pittsburgh seams or measures of coal and all constituent products of such coal in and underlying" the various lands in Greene County.

T.C.O., 6/4/15, at 1. Further, CBM "is doubtless a 'constituent product' of coal." *Id.* at 2. We find the trial court's conclusion in these regards consistent with applicable case law. We find no error in the trial court's interpretation of the leases, and specifically its determination that CBM is a constituent product to which Appellees were entitled without additional payment to Appellant. Therefore, Appellant's first issue fails.

Appellant's second issue claims trial court error for ignoring the provisions of the Pennsylvania Oil and Gas Act, 58 P.S. § 33.3, that invalidate an oil and gas lease that does not provide a minimum one-eighth royalty of all oil, natural gas or gas recovered from the subject property. Appellant is not entitled to relief on this issue. We have already determined that the trial court correctly classified the leases in question as a sale. As such, Appellant does not own the coal or the CBM, a constituent product of the coal. Again, "the coalbed methane gas contained in the coal belongs to the owner of the coal." *Kennedy*, 116 A.3d at 633. Therefore, the Oil and Gas Act is not applicable.[4] Appellant's second issue fails.

In its third issue, Appellant asserts trial court error for granting summary judgment despite the fact Appellees "have not mined one lump of coal and admitted that they had no intention of ever mining any coal" and

_____

[4] We note our agreement with Appellees that Appellant did not assert a claim under the Pennsylvania Oil and Gas Act in its complaint. Appellees' Brief at 21-22.

were using the leases solely to remove CBM without paying royalties required by law. Appellant's Brief at 21. Initially, as we noted above, Appellees were not under any obligation to pay royalties for CBM separate and apart from any royalties that might be due Appellant as advance minimum royalties under the lease. Royalties aside, it is clear under the leases that Appellees were not under any obligation to mine any coal. The leases provided for annual advance minimum royalties. Those royalties would be applied as a credit against any tonnage royalties due. The leases did not include any provisions mandating mining of coal. Rather, the leases conveyed the rights to any coal and constituent products to Appellees and provided for payments to Appellant determined by the amount of coal mined, if any, and advance minimum royalties, regardless of whether coal was actually mined.

Once again, Appellant is basing an argument on their erroneous conclusion that the there was no sale of coal, only the right to mine the coal, and that the unmined coal remained the property of Appellant. Appellant's Brief at 22. We find no error of law in the trial court's grant of summary judgment, despite the fact Appellees have not mined any coal.

Appellant next argues that the trial court erred in its interpretation of the leases in light of the Pennsylvania Oil and Gas Act (GMRA) by ruling that the leases constituted a sale of coal and CBM gas such that no CBM royalties were due Appellant. At issue here are only the two leases between

Appellant and Appellees, not any other leases involving Appellees. The trial court correctly ruled that the leases were, in actuality, sales of coal and constituent products. As stated above, the Pennsylvania Oil and Gas Act is not relevant to the sale. Appellant's fourth issue fails.

In Appellant's fifth and final issue, Appellant argues that the trial court erred by refusing to acknowledge the legal opinion of Wesley A. Cramer, Esq.,[5] and the Covert/Wallace leases[6] under which Appellant maintains Appellees are paying CBM royalties to the lessors. Once again, Appellant looks to the provisions of the GMRA for support. As the trial court stated, "[Appellant's] reliance on the [GMRA] is misplaced. As we have seen, these "Leases" are actually grants in fee and therefore [Appellant] has no interest in any constituent element of the coal, including CBM." T.C.O. 6/4/15, at 7. Appellant's fifth issue lacks merit.

_____

[5] Appellant suggests the February 23, 2005 letter from Attorney Cramer, counsel for Appellees, puts forth an incorrect statement of Pennsylvania law by advising Appellees that no separate agreement is necessary for Appellees to operate a CBM well on the subject property and that Appellees had absolute dominion over the coal and coal constituent products, including CBM. As we have already determined, we believe it is Appellant's interpretation that is incorrect.

[6] The Covert/Wallace leases are two separate "Coalbed Methane Gas Leases" entered into between Appellee, CNX Gas Company, and the Coverts and the Wallaces in July 2005. Appellees have not entered into a separate coalbed methane gas leases with Appellants. The Covert/Wallace methane gas leases are irrelevant to the leases at issue before us.

- 13 -

Finding no merit in any of Appellant's issues, we affirm the trial court's June 4, 2015 order granting summary judgment in favor of Appellee and dismissing Appellant's complaint as well as the trial court's denial of Appellant's motion for summary judgment.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/20/2016