J-A17012-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WALNUT STREET SUPERMARKETS, LLC, D/B/A THE FRESH GROCER, SUCCESSOR TO SUPERVALU OPERATIONS, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1695 EDA 2018 |
| | : | |
| THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA C/O DIVISION OF FACILITIES AND REAL ESTATE SERVICES | : | |

Appeal from the Order Entered May 9, 2018
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  December Term 2016 No. 0109

BEFORE:  PANELLA, P.J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, P.J.:          **FILED NOVEMBER 19, 2019**

In 1999, the predecessor in interest to Appellant, Fresh Grocer, agreed to lease property from the predecessor in interest to Appellee, Penn, for a state of the art grocery store and parking garage.[1] Because construction was still ongoing when the parties entered into the lease, it included provisions for a "Commencement Date"—the date on which the fifteen-year term of the lease commences. It also contained an option for extension if Fresh Grocer notified

_____

[1] The original lease was entered into on March 25, 1999 by Hamilton Square, predecessor in interest to the Trustees of the University of Pennsylvania ("Penn"), and Supervalu Operations, predecessor to Walnut Street Supermarkets, LLC, d/b/a The Fresh Grocer, ("Fresh Grocer").

Penn of its intent to renew the lease at least six months prior to the lease expiring.

Fresh Grocer opened for business on April 20, 2001. Several years later, Fresh Grocer filed a complaint against Penn concerning outstanding construction issues. On June 28, 2007, the parties entered into a settlement agreement and signed an omnibus amendment to the lease.

Fresh Grocer notified Penn of its intent to renew the lease on February 29, 2016. Penn rejected the renewal, claiming that, based on the April 20, 2001 commencement date, the attempted renewal was not within the six-month period before the lease expired on April 30, 2016.

Fresh Grocer filed a complaint against Penn arguing that the Commencement Date of the fifteen-year term of the lease was June 28, 2007 (the date of the settlement agreement); therefore, the notice of intent to extend was timely, or, in the alternative, that Penn was equitably estopped from denying Fresh Grocer's renewal.[2] The trial court granted Penn's motion for summary judgment, finding that the Commencement Date of the lease was April 20, 2001, and that Fresh Grocer's renewal was untimely.

Fresh Grocer appealed the court's order, arguing that the court 1) erred in determining the Commencement Date, 2) erred in failing to hold that the lease provision was ambiguous concerning the commencement date, and

---

[2] Penn counterclaimed for damages, possession, and attorney's fees.

3) erred in rejecting the claim that Penn was equitably estopped from denying the renewal request as untimely.[3] We conclude that based on the unambiguous terms of the lease, the Commencement Date was April 20, 2001, when Fresh Grocer opened for business, and Penn was not estopped from denying the renewal request. Therefore, we affirm.

Fresh Grocer's three issues all raise challenges to the trial court's interpretation of the lease when the court granted summary judgment to Penn.

> When reviewing a trial court's grant of summary judgment, our standard and scope of review are as follows:

>> Our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo*.

---

[3] The trial court granted Penn's motion for summary judgment dismissing Fresh Grocer's claims, but deferred ruling on Penn's claim for possession. Despite the fact that the trial court's ruling was not a final order, pursuant to the Declaratory Judgment Act, 42 Pa.C.S.A. § 7532, it is defined as a final order because it affirmatively declared the rights of the parties. ***See Nationwide Mut. Ins. Co. v. Wickett***, 763 A.2d 813, 817 (Pa. 2000).

***Birdie Assocs., Ltd. P'ship v. CNX Gas Co., LLC***, 149 A.3d 367, 371 (Pa. Super. 2016) (citations omitted). Furthermore, "when reviewing an issue of law in a declaratory judgment action, our scope of review is plenary and our standard of review is *de novo*." ***Missett v. Hub Int'l Pa., LLC***, 6 A.3d 530, 534 (Pa. Super. 2010) (citation omitted).

In its first issue, Fresh Grocer claims that the trial court erred when it granted Penn's motion for summary judgment because the renewal notice which Fresh Grocer gave Penn was timely. Specifically, it argues that the court erred in holding that the lease term commenced April 20, 2001. Fresh Grocer contends that, based on the plain language of the lease, because the parcel pickup area of the parking garage did not operate as intended, the lease did not commence until the parties signed the June 28, 2007 lease agreement. ***See*** Fresh Grocer's Brief, at 40-52. We disagree.

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.

***Murphy v. Duquesne Univ. of the Holy Ghost***, 777 A.2d 418, 429 (Pa. 2001) (citations omitted).

At issue are specific provisions of the lease addressing the Commencement Date, which provide as follows:

1.01 Certain Defined Terms. As used herein, the term:

- 4 -

(e) "Commencement Date" means the date on which the Term of this Lease commences and shall be the date on which Landlord delivers the Premises to Tenant (the "Delivery Date") as defined in Section 2.05 hereof.

*   *   *

2.05 Commencement Date.

(a) The Term of this Lease shall commence on the date ("Commencement Date") on which the Landlord delivers the Premises to Tenant with a certificate of occupancy for the Landlord's Work (unless Landlord is unable to obtain such certificate of occupancy because Tenant's Work is not complete or because of some deficiency in or code violation relating to Tenant's Work) (the "Delivery Date") provided, however, that the Commencement Date shall be deferred until such time as the Garage, including parcel pick-up areas and elevators is completed and open for operation. Landlord or Tenant shall, within ten days after request of the other party, confirm by appropriate instrument in form satisfactory to Landlord and Tenant, the Commencement Date and expiration of the Term of this Lease, and any extension options set forth herein. Except as otherwise explicitly set forth herein, Landlord and Tenant acknowledge and agree that the Building is a project that is not yet constructed and therefore no representation warranty or promise has or is being made as to the actual Delivery Date, and Tenant is not acting in reliance on any estimate thereof made herein or to be made at any time in the future.

*   *   *

8.08 Effect of Opening for Business. By opening the Premises for business, Tenant shall be deemed to have (a) accepted the Premises, (b) acknowledged that the Premises are ready and suitable for occupancy hereunder and that whatever certificates of occupancy or other permits are required for operation have been obtained and paid for by Tenant, . . . (e) acknowledged that the Commencement Date has occurred. . . .

Lease, 3/25/1999, at §§ 1.01(e), 2.05(a), 8.08.

Upon review, we conclude that based on the plain language of the lease, the parties intended the Commencement Date to be the date Fresh Grocer

was able to open for business. Paramount to our interpretation is the intention of the parties, which, here is clearly to define the Commencement Date to coincide with Fresh Grocer being able to open for business and operate the premises as a grocery store—the ultimate objective of the contract.

The plain language of sections 1.01(e) and 2.05(a), when read together, describes the Commencement Date as the date when Penn delivers the property to Fresh Grocer for it to operate as a grocery. Additionally, section 8.08 specifically provides that, by opening the premises for business, Fresh Grocer acknowledged that the Commencement Date occurred.

Considering the actions of the parties, and when read together with the other sections of the lease, the provision in section 2.05(a) concerning deferral of the Commencement Date until completion of the garage, does not change our interpretation. Fresh Grocer had the opportunity to defer its opening while awaiting resolution of issues with the garage, yet it chose to open for business on April 20, 2001. Hence, the trial court did not err in concluding that the Commencement Date was April 20, 2001, the date when Fresh Grocer opened for business. Fresh Grocer's first issue does not merit relief.

In its second issue, Fresh Grocer requests that this Court find the lease agreement ambiguous on the issue of the Commencement Date. It asks that we remand for a new trial judge to consider parol evidence on the issue, as Fresh Grocer contends the currently assigned judge is unlikely to be impartial. *See* Appellant's Brief, at 54.

A review of Fresh Grocer's Pa.R.A.P. 1925(b) statement of errors complained of on appeal does not reveal any use of the word "ambiguous," nor does it reveal any request for reassignment of the trial judge. Under these circumstances, we conclude that Fresh Grocer has waived these arguments. *See* Pa.R.A.P. 1925(b)(4)(vii); *see also Andrews v. Cross Atl. Capital Partners, Inc.*, 158 A.3d 123, 129 (Pa. Super. 2017).

In its final issue, Fresh Grocer contends that the trial court erred in not holding that Penn was equitably estopped from denying its renewal notice. Fresh Grocer argues that the Settlement Agreement, signed in June 2007, contained a provision giving it reduced rent for ten years, and set forth a loan from Penn to Fresh Grocer payable over a ten-year period. It claims that it relied on these provisions for its belief that the lease would last until June 2017, and the renewal notice was not due until December 2016. Therefore, it claims the court erred in granting Penn's motion for summary judgment and dismissing the equitable estoppel claim. We disagree.

> Equitable estoppel arises when a party by acts or representation intentionally or through culpable negligence, induces another to believe that certain facts exist and the other justifiably relies and acts upon such belief, so that the latter will be prejudiced if the former is permitted to deny the existence of such facts.

*Guerra v. Redevelopment Auth. of Phila.*, 27 A.3d 1284, 1290 (Pa. Super. 2011) (citation omitted).

Here, the court found that Fresh Grocer's allegations were not sufficient to establish a *prima facie* case that Penn intentionally or negligently induced

Fresh Grocer to not timely renew its lease. We discern no error in the court's legal conclusion.

The loan and reduced rent are circumstances independent of the lease's provision for renewal. Penn's actions in giving reduced rent for ten years and making a loan payable over a ten-year period were neither intentionally nor negligently designed to induce Fresh Grocer into believing the Commencement Date occurred in 2007. Had Fresh Grocer timely notified Penn of its intent to renew, it would have been able to take advantage of the full ten years of reduced rent. Fresh Grocer is correct that the 2007 Settlement Agreement contained a ten-year period for the loan and reduced rent; however, this does not estop Penn from refusing to accept Fresh Grocer's late lease renewal. Fresh Grocer's final claim does not merit relief.

Order affirmed.

President Judge Emeritus Ford Elliott joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/19